Thomas & Karen Ryan
4446 Lazy Lane
San Jose, CA 95135
(408) 274-7811
karen.ryan45@gmail.com



**FILED**

JAN 20 2011

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
            DEPUTY CLERK

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

THOMAS AND KAREN RYAN

      Plaintiffs,

    vs.

BAC Home Loans Servicing, LP

      Defendant

No. 2:10-cv-02928-WBS-GGH

**PLAINTIFFS' RESPONSE TO BAC
HOME LOANS SERVICING, LP
MOTION TO DISMISS**

Hon. William B. Shubb

    1.    The Plaintiffs, in their Original Petition, plead that Defendants charged false fees as stipulated by Plaintiffs as listed on the HUD 1 Settlement Statement, included as Exhibit 1. Plaintiffs specifically plead that Defendants, at the time of settlement of the contract, Defendants failed to provide documentation to establish that said fees were not included in those fees expressly addressed by the Real Estate Settlement Procedures Act as forbidden to be charged to Plaintiffs at settlement.

    2.    Plaintiffs stipulated each fee charged with particularity. Plaintiffs calculated the precise amount that Plaintiffs would have overpaid the note had Plaintiffs paid off the note as stipulated by the Truth In Lending Statement provided by Defendants (see Exhibit 2). Plaintiffs specifically alleged that said fees were fraudulent. Plaintiffs alleged that Defendants failed to provide full disclosure by failing to provide documentation to prove that the above fees were authorized by law, that the services alleged provided were necessary, that the amount charged for each service was necessary, and that Defendants did not take an undisclosed markup on said fees.

    3.    Plaintiffs further alleged that Defendants, acting in concert and collusion with the loan broker, toward the perpetration of a carefully contrived connivance, provided the amounts listed in the HUD 1 Settlement Statement, to the loan broker as an undisclosed yield spread

premium. Said undisclosed yield spread premium is alleged to be in addition to the one percent loan origination fee, charged to Plaintiffs, as allowed by law. Plaintiffs alleged that said payment to the broker of undisclosed yield spread premium was a predicate act intended to improperly influence loan broker to misrepresent facts to Plaintiffs, to give partial disclosure of those facts which would appear favorable to the intent of the loan broker, while failing to give full disclosure of other facts that would not seem favorable to the contract.

4.      By the above, Plaintiffs stated a claim for which recovery could be had, and therefore, Defendants' motion to dismiss is frivolous. Plaintiffs moves the court to deny Defendants' pleading, or, in the alternative, treat Defendants' pleading as a request for more definite statement, in which case, Plaintiffs will provide a more definite statement as requested.

5.      Further, Plaintiffs move the court to order sanctions against Defendants for filing a frivolous pleading and for failing to speak with candor to the court as Defendants are totally inept or acted with deliberate intent to improperly influence the court with false pleadings.

## ALL POSSIBLE PARTIES NOT NAMED

6.      Plaintiffs have alleged that Lenders together, in a "conspiratorial nature", undertook the misdeeds herein. Lenders named herein are indeed liable to the extent that they acted as agents, servants and/or employees of the remaining Lenders and for each other. The Ninth Circuit has held that averments of agency are not required in a complaint. (See, Greenberg v. Sala, 822 F.2d 882, 886 (9th Cir. 1987) (holding that "[a] person legally responsible for an act may be alleged to have committed it without going into the theories which support that ultimate fact").) As such, the "civil conspiracy" as alleged and incorporated into all subsequent Causes of Action sufficiently provides the threshold legal and factual basis for several causes of action that at first blush may seem inappropriate for a particular Lender. The overview to this "shell" game is that all who participated in this scheme cannot now claim that they are somehow an innocent, unrelated third party.

7.      Since all actors in a conspiracy act *in pari delicto,* and, thereby, are equally culpable for the acts of each, Plaintiffs did not name Agent, Appraiser, Underwriter, Closing Agent, et, as said actors are not necessary parties. In the interest of judicial economy, Plaintiffs only specifically named the party (parties) presently claiming agency and standing to enforce the note. If said Lender has reason to believe that others are liable, Lender is certainly free to cross-complain in order to lessen the potential financial burden on Lender.).

## STATUTE OF LIMITATIONS/ EQUITABLE TOLLING

8.      Plaintiffs acted with due diligence by dealing only with licensed professionals. Plaintiffs, by so doing had cause to trust in the proactive statements of Defendants concerning the true value of the property, the condition of the real estate market, and the propriety of the fees charged to Plaintiffs at closing.  Defendants acted with deliberate malice toward Plaintiffs in that Defendants by making proactive statements to Plaintiffs that revealed certain facts which would give a reasonable person of ordinary prudence cause to believe the current loan was properly priced and that said loan was the only loan Plaintiffs qualified for while withholding facts which would have given Plaintiffs full disclosure.  Defendants actively concealed the complete truth from Plaintiffs with the intent of defrauding Plaintiffs.

  a.   The Eleventh Circuit stated that "in deciding whether the statute should be tolled, it must be determined whether a 'reasonably diligent plaintiff' would have discovered the fraud." Id. ( *Sterlin v. Biomune Systems, 154 F.3d 1191, 1201 (10th Cir. 1998))*.

9.      Plaintiffs, once put on notice of the pervasive fraud affecting the real estate industry, acted immediately with due diligence and engaged professionals to examine into the propriety of the practices engaged in by Defendants.

  a.   The First Circuit, based on the same rationale as the Seventh Circuit, has stated that while "'storm warnings' of the possibility of fraud trigger a plaintiff's duty to investigate in a reasonably diligent manner, . . . his cause of action is deemed to accrue on the date when he should have discovered the alleged fraud." *Maggio v. Gerard Freezer & Ice Co.*, 824 F.2d 123, 128 (1st Cir. 1987).

10.     Defendants acted in concert and collusion, one with the other, in an organized scheme wherein, from the beginning, one predicate act after another was committed against Plaintiffs in order to establish trust, then used that trust to perpetrate fraud against Plaintiffs by systematically making false claims to Plaintiffs in order to induce Plaintiffs into entering into an express contract that was based on fraud.  Plaintiffs acted in good faith in all things and with due diligence by only dealing with licensed professionals.  In as much as all actors were professionals, duly licensed by the state and federal governments and all governed by the relevant consumer protection laws, Plaintiffs had cause to expect good faith and fair dealings from said licensed professionals.

  a.   "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *Price v. Wells Fargo Bank, 213 Cal.App.3d*

*465, 478, 261 Cal. Rptr. 735 (1989); [\*15] Rest.2d Contracts § 205*. A mortgage broker has fiduciary duties. *Wyatt v. Union Mortgage Co., (1979) 24 Cal. 3d. 773. Further, In Jonathan Neil & Associates, Inc. v Jones, (2004) 33 Cal. 4th 917.*

    b.  "A person who provides brokerage services to a borrower in a covered loan transaction by soliciting lenders or otherwise negotiating a consumer loan secured by real property, is the fiduciary of the consumer...this fiduciary duty [is owed] to the consumer regardless of whom else the broker may be acting as an agent for . . . The fiduciary duty of the broker is to deal with the consumer in good faith. If the broker knew or should have known that the Borrower will or has a likelihood of defaulting ... they have a fiduciary duty to the borrower not to place them in that loan." *(California Department of Real Estate, Section 8: Fiduciary Responsibility, www.dre.ca.gov).*

11.    Plaintiffs had no notice of wrong doing until the improprieties of the real estate market were finally made public in the popular media.

    a.  Other courts have indicated the one-year limitations period commences when the plaintiff is placed on inquiry notice, unless the plaintiff can show the actual exercise of reasonable diligence to discover the fraud. If the plaintiff can show the exercise of such diligence, the limitations period begins to run when the plaintiff actually discovers the facts underlying the alleged fraud. If, however, the plaintiff cannot show such actual diligence, constructive knowledge of the fraud is imputed to the plaintiff as of the date of inquiry notice. For example, in *Dodds v. Cigna Securities, Inc., 12 F.3d 346 (2d Cir. 1993)*, the Second Circuit stated that "when the circumstances would suggest to an investor of ordinary intelligence the probability that she has been defrauded, a duty of inquiry arises, and knowledge will be imputed to the investor who does not make such an inquiry. " *Id. at 350.* The Dodds court further stated that the doctrine of "equitable tolling will stay the running of the statute of limitations only so long as the plaintiff has exercised reasonable care and diligence in seeking to learn the facts which would disclose [\*\*35] fraud." Id. (internal quotations omitted). *Sterlin v. Biomune Sys., 154 F.3d 1191, 1201.*

12.    When Plaintiffs became aware of potential fraud by the licensed professionals Plaintiffs had been induced to trust, Plaintiffs made due diligent inquiry and discovered the fraud complained of herein.

    a.  Plaintiff exercised due diligence and the time limitations in the Truth in Lending Act should be tolled so that the intent of the Legislature may be realized. The Seventh Circuit, essentially merging the inquiry notice and reasonable diligence standards into one governing standard, has indicated that a plaintiff is not put on inquiry notice until the plaintiff reasonably should have discovered the fraud. See Marks v. CDW Computer Ctrs., Inc., 122 F.3d 363, 368 (7th Cir. 1997) ("Inquiry notice does not begin to run unless and until the investor is able, with the exercise of reasonable diligence (whether or not actually exercised), to ascertain

the information needed to file suit."); see also <u>Law v. Medco Research, Inc., 113 F.3d 781, 785 (7th Cir. 1997)</u> ("The plaintiff gets a year after he learned or should have learned the facts that he must know to know that he has a claim."). An earlier Seventh Circuit case, however, rejected the plaintiff's argument that "in spite of reasonable diligence, it could not discover the facts underlying the Defendants' fraud" and held that the one-year limitations period began to run once the plaintiff was placed on inquiry notice of the possibility of fraud. <u>Whirlpool Fin. Corp. v. GN Holdings, Inc., 67 F.3d 605, 610 & n.3 (7th Cir. 1995)</u>. Sterlin v. Biomune Sys., 154 F.3d 1191, 1201.

13.    In the alternative, the acts as alleged against Defendants amount to criminal fraud in that, in a scheme to deceive and mislead Plaintiffs, Defendants, by sham and trickery, induced Plaintiffs into entering into a predatory loan contract wherein Plaintiffs were charged amounts not allowed by law.  Defendants, in perpetrating the above referenced predicate acts toward their carefully crafted criminal conspiracy, relied on the trust engendered by the laws intended to protect Plaintiffs and others similarly situated from just the sort of abuse visited on Plaintiffs. Plaintiffs allege a scheme of fraud and, therefore, upon proof at trial, Plaintiffs have a right to seek common law equitable recoupment.

## PLAINTIFFS MADE CLAIMS WITH SPECIFICITY AND PARTICULARITY

14.    Plaintiffs alleged that the original lender overpaid the loan originator, with fees improperly charged to Plaintiffs at closing in order to induce the originator of the loan to breach his fiduciary duty to Plaintiffs. By doing this, they committed common law fraud by making false statements to Plaintiffs in order to convince Plaintiffs that Plaintiffs only qualified for a more expensive loan product than Plaintiffs actually qualified for.  Plaintiffs are prepared to prove up said claims after discovery, at a trial on the merits.

15.    Plaintiff alleged that Defendants made partial disclosure of alleged facts concerning the conditions of the loan which is the basis for the issuance of the security instrument and lien document at issue.  Plaintiff is prepared to prove at trial, after complete discovery that Defendants failed to give full disclosure of facts that, if disclosed would have caused Plaintiff to make a different decision than the one made.

16.    Plaintiff alleged that the trustee, at closing, executed a carefully contrived connivance intended to apply undue pressure on Plaintiff in an effort to effect lack of full

disclosure to Plaintiff and induce Plaintiff to enter into a contract without said full disclosure. Plaintiff is prepared to provide proof, at trial, sufficient to convince a jury.

17.     Plaintiffs allege that, at closing, false fees were charged to Plaintiffs by lender. Said allegations are reiterated below with specificity.  Plaintiffs alleged that the original lender sold the security instrument immediately after closing, but failed to transfer the lien document to the purchaser of said security instrument.  Plaintiffs are prepared to prove, subsequent to discovery, that the lender, while still holding the security instrument, received consideration and, therefore, could not be harmed rendering the lien unenforceable.

18.     Plaintiffs alleged, and are prepared to prove at trial, that the lender maintained possession of the lien document in order to be able to file an IRS Form 1099a and write the entire amount of the original note off lender's capital gains tax and, thereby, receive consideration a second time.

19.     Plaintiffs alleged, and are prepared to prove at trial that, the original security instrument, if said instrument still exists, may give the holder a claim against the signator, but have no claim against the property.

20.     Plaintiffs alleged, and are prepared to prove at trial that, Defendants, and the attorneys claiming to represent same, have committed fraud by representing to the court that Defendants are a real party in interest in the contract of sale and have standing to take said property from Defendants when no such claim exists.

21.     Plaintiffs have alleged, and are prepared to prove at trial, that the Defendants, by claiming standing to express the provisions of the contract of sale and lien, claim to be real parties in interest and, therefore, under the Federal Trade Commission Holder Rule 16 CFR 433, are subject to any claim Plaintiffs may have against the original lender.

## LENDER CHARGED FALSE FEES

22.     Lender charged fees to Plaintiffs that were in violation of the limitations imposed by the Real Estate Settlement Procedures Act as said fees were simply contrived and not paid to a third party vendor.

23.     Lender charged other fees that were a normal part of doing business and should have been included in the finance charge.

24.    Below is a listing of the fees charged at settlement. Neither at settlement, nor at any other time did Lender or Trustee provide documentation to show that the fees herein listed were valid, necessary, reasonable, and proper to charge Petitioner.

| 801 | Loan Origination Fee | $1,831.20 |
|-----|----------------------|-----------|
| 803 | Appraisal | $325.00 |
| 808 | Doc Prep fee | $198.00 |
| 809 | Tax Service Contract | $90.00 |
| 810 | Underwriting fee | $400.00 |
| 811 | Flood Certification Fee | $17.00 |
| 812 | Processing Fee | $498.00 |
| 813 | Wire Fee | $40.00 |
| 814 | Application Fee | $100.00 |
| 815 | Supplementary Summery | $100.00 |
| 901 | Interest from 12/13/06 to 01/01/07 @$5.09000 /day | $96.71 |
| 1004 | County Property Taxes | $57.48 |
| 1101 | Settlement fee | $672.00 |
| 1104 | 1114 Endorsements No.111-8,8.1,PUD,ARM | $200.00 |
| 1105 | 1116 Standards Lenders Policy for 2nd loan | $100.00 |
| 1106 | 1117 Supplemental Summary | $200.00 |
| 1108 | Title Insurance | $889.00 |
| 1111 | Overnight Delivery | $40.00 |
| 1112 | Special delivery fee | $15.47 |
| 1113 | Email Loan Doc fees | $25.00 |
| 1304 | Working Capitol | $259.08 |
| 1305 | Prorated HOA Dues | $79.40 |
| 1306 | Reserve Contribution | $250.00 |
| 1307 | Prorated property taxes | $89.37 |

## LENDER SPLIT NOTE

25.    Lender, in order to hide the fact that borrower could not qualify for the purchase of the particular property in question, engineered a fraud by separating the note into two separate loans. Petitioner alleges and maintains that this second note was intended to defraud the eventual purchaser of the security instrument and Petitioner. By separating the note into two separate loans, Lender made it appear that Petitioner would qualify for each note separately, when in fact, they were not two loans, but one.

26.    By artificially splitting the note into two separate loans, Lender dramatically increased the cost to Petitioner.

## IMPROPER FEES FOR SECOND NOTE

Plaintiffs' Response to Defendants' Motion to Dismiss

27. Lender charged fees to Petitioner that were contrived to increase costs to Petitioner and increase profit to Lender. Said fees were a contrivance and were totally false. As with the first note referenced above, Lender charged fees for services not rendered, took markups on fees actually rendered, and charged Petitioner fees that were a normal part of doing business and should have been included in the finance charge.

28. Below is a listing of the fees charged at settlement. Neither at settlement, nor at any other time did Lender or Trustee provide documentation to show that the fees herein listed were valid, necessary, reasonable, and proper to charge Petitioner.

| 808 | Tax Service fee | $80.00 |
| 809 | Flood Cert Fee | $8.75 |
| 810 | Underwriting fee | $595.00 |
| 811 | Mers fee | $3.66 |
| 813 | Loan origination fee | $3,031.20 |
| 814 | Processing fee | $478.00 |
| 815 | Supplementary Summary | $100.00 |
| 901 | Interestfrom1/10/07to 02/01/07 @ $56.056400/day | $1,233.24 |
| 1004 | County Property Taxes | $1,283.37 |
| 1101 | Settlement fee | $472.50 |
| 1108 | Title Insurance | $1,207.34 |
| 1110 | 1114 electronic doc down load | $100.00 |
| 1111 | Endorsement 105 First American Title | $100.00 |
| 1112 | Special Messenger Service | $30.00 |
| 1113 | Wire transfer fee | $30.00 |
| 1202 | City/county tax/stamp deed | $416.90 |
| 1301 | 1312 Notary signing fee | $150.00 |
| 1303 | Capitol Contribution | $504.26 |
| 1304 | Association dues | $252.13 |
| 1305 | Transfer Fees | $50.00 |
| 1306 | 1311 Prorated property tax | $811.94 |
| 1307 | Property disclosure Report | $30.00 |
| 1308 | 1310 prorated HOA dues | $178.93 |

29. Debtor is unable to determine whether or not the above fees are valid in accordance with the restrictions provided by the various consumer protection laws. Therefore it was demanded to please provide;

   a. a complete billing from each vendor who provided the above listed services;
   b. the complete contact information for each vendor who provided a billed service;
   c. clearly stipulate as to the specific service performed;
   d. a showing that said service was necessary;
   e. a showing that the cost of said service is reasonable;

Plaintiffs' Response to Defendants' Motion to Dismiss

f.  a showing of why said service is not a regular cost of doing business that should rightly be included in the finance charge.

30.    The above charges have been disputed and deemed unreasonable until such time as said charges have been demonstrated to be reasonable, necessary, and in accordance with the limitations and restrictions included in any and all laws, rules, and regulations intended to protect the consumer.

31.    In the event lender fails to properly document the above charges, borrower will consider same as false charges.  The effect of the above amounts that borrower would pay over the life of the note will be an overpayment of $200,571.37. This amount will be reduced by the amount of items above when said items are fully documented.

## RESPA PENALTIES

32.    From a cursory examination of the records, with the few available, the apparent RESPA violations are as follows:

    a.  Good  Faith Estimate not within limits
    b.  No HUD-1 Booklet
    c.  Truth In Lending Statement not within limits compared to Note
    d.  Truth in Lending Statement not timely presented
    e.  HUD-1 not presented at least one day before closing
    f.  No Holder Rule Notice in Note
    g.  No 1st Payment Letter
        1.  Not signed and dated;
        2.  Financial Privacy Act Disclosure;
        3.  Equal Credit Reporting Act Disclosure;
        4.  Notice of right to receive appraisal report;
        5.  Servicing disclosure statement;
        6.  Borrower's Certification of Authorization;
        7.  Notice of credit score;
        8.  RESPA servicing disclosure letter;
        9.  Loan discount fee disclosure;
        10. Business insurance company arrangement disclosure;
        11. Notice of right to rescind.

33.    The courts have held that the borrower does not have to show harm to claim a violation of the Real Estate Settlement Procedures Act, as the Act was intended to insure strict compliance.  And, in as much as the courts are directed to assess a penalty of no less than two

hundred dollars and no more than two thousand, considering the large number enumerated here, it is reasonable to consider that the court will assess the maximum amount for each violation.

34.     Since the courts have held that the penalty for a violation of RESPA accrues at consummation of the note, borrower has calculated that, the number of violations found in a cursory examination of the note, if deducted from the principal, would result in an overpayment on the part of the borrower, over the life of the note, of $378,725.98.

35.     If the violation penalty amounts for each of the unsupported fees listed above are included, the amount by which the borrower would be defrauded is $361,837.10.

36.     Adding in RESPA penalties for all the unsupported settlement fees along with the TILA/Note variance, it appears that lender intended to defraud borrower in the amount of $1,142,612.39.

## PLAINTIFF PROPERLY PLEAD CLAIM TO QUIET TITLE

37.     Plaintiff properly averred a claim to quiet title. Plaintiff has set forth facts concerning the title interests of the subject property. Moreover, as shown above, Plaintiff's claims for rescission and fraud are meritorious. As such, Plaintiff's bases for quiet title are meritorious as well.

38.     Any claim the lender has or would have are without any right, and Lenders have no title, estate, lien, or interest in the Subject Property in that purported power of sale contained in the Deed of Trust is of no force or effect because Lenders' security interest in the Subject Property has been rendered void and that the Lenders are not the holder in due course of the Promissory Note. Moreover, because Plaintiff properly pled all Lenders' involvement in a the fraudulent scheme, all Lenders are liable for the acts of its co-conspirators,

> "a Plaintiff is entitled to damages from those Lenders who concur in the tortious scheme with knowledge of its unlawful purpose." Wyatt v. Union Mortgage Co., 24 Cal. 3d 773, 157 Cal. Rptr. 392, 598 P.2d 45 (1979); Novartis Vaccines and Diagnostics, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc., 143 Cal. App. 4th 1284, 50 Cal. Rptr. 3d 27 (1st Dist. 2006); Kidron v. Movie Acquisition Corp., 40 Cal. App. 4th 1571, 47 Cal. Rptr. 2d 752 (2d Dist. 1995).

39.     If Defendants are granted standing absent proof of a complete chain of custody of the security instrument and lien, the court will create a break in the chain of title that will render the property uninsurable. This will create a level of insecurity in the real estate market that could well haunt the public and the courts for generations.

## PLAINTIFFS PROPERLY PLEAD BREACH OF FIDUCIARY DUTY

40.     Plaintiffs incorporate the above allegations as though fully restated herein. Parties were agents of the plaintiff. Broker was an agent of the Plaintiff, by express and implied contract and by operation of law. Plaintiffs engaged Lender as their agent for obtaining a loan to purchase their property. Pursuant to the previously mentioned settlement statement fees, Plaintiff paid Lender monies for services from the proceeds of the loan. As Plaintiffs' agent Lender owed a fiduciary duty to Plaintiffs to act primarily for their benefit, to act with proper care and diligence, and not to make a personal profit from the agency at the expense of his principal, the Plaintiff. As Plaintiffs' agent, Lender owed a duty of loyalty to Plaintiffs and a duty to deal fairly with them at all times. Lender, willfully and intentionally breached his fiduciary duty of loyalty to Plaintiffs including but not limited to the following to wit:

        a.     Obtained mortgage loans with unfavorable terms;

        b.     Misrepresenting the terms of the loan and the ability to refinance the loan at a later date to gain a profit from the sale of the loan in question;

        c.     By accepting funds from Lender in the form of kickbacks in return for referring Plaintiff to the other Lender;

        d.     By arranging loans at excessive interest rates and onerous terms as applied to the ability of this Plaintiffs to afford;

        e.     Plaintiffs have been damaged because of Lender's breaches and as such are entitled to actual damages.

        f.     The actions of Lender in deliberately committing a breach of fiduciary duty authorize the imposition of punitive damages in that they show willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which raise the presumption of a conscious indifference to consequences.

41.    Plaintiffs have been damaged because of Lender's breaches and as such are entitled to actual damages.

42.    The actions of Lender in deliberately committing a breach of fiduciary duty authorize the imposition of punitive damages in that they show willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which raise the presumption of a conscious indifference to consequences.

## PLAINTIFF PROPERLY PLEAD NEGLIGENCE/NEGLIGENCE PER SE

43.    Plaintiff hereby incorporates by reference, re-pleads and re-alleges each and every allegation contained in all of the paragraphs of the General Allegations and Facts Common to All Causes of Action as though the same were set forth herein.

44.    Defendants owed a general duty of care with respect to Plaintiffs, particularly concerning their duty to properly perform due diligence as to the loans and related transactional issues described hereinabove.

45.    In addition, Defendants owed a duty of care under TILA, HOEPA, **RESPA** and the Regulations X and Z promulgated there under to, among other things, provide proper disclosures concerning the terms and conditions of the loans they marketed, to refrain from marketing loans they knew or should have known that borrowers could not afford or maintain, and to avoid paying undue compensation such as "yield spread premiums" to mortgage Agents and loan officers.

46.    Defendants knew or in the exercise of reasonable care should have known, that the loan transactions involving Plaintiff and other persons similarly situated were defective, unlawful, violative of federal and state laws and regulations, and would subject Plaintiff to economic and non-economic harm and other detriment.

47.    Plaintiffs are among the class of persons that TILA, HOEPA, **RESPA** and the Regulations X and Z promulgated there under were intended and designed to protect, and the conduct alleged against Defendants, and each of them is the type of conduct and harm which the referenced statutes and regulations was designed to deter.

48.    As a direct and proximate result of Defendants' negligence, Plaintiff suffered economic and non-economic harm in an amount to be shown according to proof at trial.

## PLAINTIFF PROPERLY PLEAD COMMON LAW FRAUD

49.     Plaintiff hereby incorporates by reference, re-pleads and re-alleges each and every allegation contained in all of the paragraphs of the General Allegations and Facts Common to All Causes of Action as though the same were set forth herein.

50.     If any Defendants misrepresentations made herein were not intentional, said misrepresentations were negligent. When the Defendants made the representations alleged herein, he/she/it had no reasonable ground for believing them to be true. Defendants made these representations with the intention of inducing Plaintiff to act in reliance on these representations in the manner hereafter alleged, or with the expectation that Plaintiff would so act.

51.     Plaintiff is informed and believes that Defendants et al, facilitated, aided and abetted various Defendants in their negligent misrepresentation, and that various Defendants was negligent in not implementing procedures such as underwriting standards oversight that would have prevented various Defendants from facilitating the irresponsible and wrongful misrepresentations of various Defendants.

52.     Plaintiff is informed and believes that Defendants acted in concert along with other others named herein in promulgating false representations to cause Plaintiff to enter into the LOAN without knowledge or understanding of the terms thereof.

53.     As a proximate result of the negligent misrepresentations of Defendants as herein alleged, the Plaintiff sustained damages, including monetary loss, emotional distress, loss of credit, loss of opportunities, attorney fees and costs, and other damages to be determined at trial. As a proximate result of Defendants' breach of duty and all other actions as alleged herein, Defendants has suffered severe emotional distress, mental anguish, harm, humiliation, embarrassment, and mental and physical pain and anguish, all to Plaintiff's damage in an amount to be established at trial in excess of $1,142,612.39.

## PLAINTIFF PROPERLY PLEAD FRAUD BY NON-DISCLOSURE

54.     Plaintiff hereby incorporates by reference, re-pleads and re-alleges each and every allegation contained in all of the paragraphs of the General Allegations and Facts Common to All Causes of Action as though the same were set forth herein.

55.     Defendants made proactive statements of fact to Plaintiff giving partial disclosure Defendants intended that Plaintiff would rely on in making a decision to enter into an express

Plaintiffs' Response to Defendants' Motion to Dismiss

contract for the purchase of the property. By said proactive statements intended as partial disclosure, Defendants invoked a duty to full disclosure. Defendants failed to give full disclosure to Plaintiff. Plaintiff did not have equal access to, or equal opportunity to discover information upon which Defendants gave partial disclosure. Plaintiff relied on the disclosure given by Defendants as being complete. Plaintiff was harmed by the lack of full disclosure by Defendants.

56.     The elements of a fraudulent omissions claim are: (1) concealment or nondisclosure of a material fact, (2) knowledge of falsity (scienter), (3) intent to defraud, (4) justifiable reliance, and (5) resulting damages. *Charnay v. Cobert, 145 Cal. App. 4th 170, 184 (2006). See also Lazar v. Super. Ct., 12 Cal. 4th 631, 638 (1996).* [*48]  While certain fraud claims are subject to Fed. R. Civ. P. 9(b), Plaintiffs need only plead their claim pursuant to Fed. R. Civ. P. 8(a). A fraud by omission claim does not need to meet the requirements of Rule 9(b) because it is based on the *absence* of representations, rather than on representations that were made and can be detailed in a pleading. *See, e.g., Falk v. GMC, 496 F. Supp. 2d 1088, 1098-99 (N.D. Cal. 2007)* ("plaintiff in a fraud by omission suit will not be able to specify the time, place and specific content of an omission as precisely as would a plaintiff in a false representation claim... [A] fraud by omission claim can succeed without the same level of specificity required by a normal fraud claim."). Regardless, Plaintiffs have pled their fraudulent omissions claim with particularity.

57.     At this point, all Plaintiff is required to do is state the factual basis for his Fraud claim pursuant to Rule 9(b). To meet the requisite level of specificity, Rule 9(b) only requires identification of circumstances constituting fraud, including the time, place, and nature of the alleged fraudulent activities, such that a Defendants can prepare adequate answer to allegations. *(Bosse v. Crowell Collier & MacMillan, 565 F.2d 602, 611 (9th Cir. 1977).)* A pleading is sufficient under Rule 9(b) if it identifies circumstances constituting fraud so that the Defendants can prepare an adequate answer from the allegations. *(Neubronner v. Milken, 6 F.3d 666, 671-672 (9th Cir. 1993), quoting Gottreich v. SF Inv. Corp., 552 F.2nd 866 (9th Cir. 1977).)* However, Rule 9(b) does not require nor make legitimate pleading of detailed evidentiary matter. *(Walling v. Beverly Enterprises, 476 F.2d 393, 397 (9th Cir. 1973).)* Rule 9(b) may be relaxed with respect to matters within opposing party's knowledge. *Neubronner v. Milken, 6 F.3d 666, 672 (9th Cir. 1993).)* Under Rule 9(b), it is also not necessary, once complaint adequately identified particular Defendants with category of Defendants allegedly responsible for some continuing course of conduct, to plead more than group conduct of Defendants. *(In re Equity Funding Corp. of Am. Sec. Litig., 416 F.Supp. 161, 181 (C.D. Cal. 1976).)* Moreover, in cases where fraud was conducted over several years, a plaintiff is not

required to allege each date of each Defendants' fraudulent conduct since such requirement would defeat the purpose of Rule 8 requiring that pleading be short, plain, and in concise statements.

## PLAINTIFF PROPERLY PLEAD BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

58.    Plaintiff properly pled Defendants violated the breach of implied covenant of good faith and fair dealing. "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *Price v. Wells Fargo Bank, 213 Cal.App.3d 465, 478, 261 Cal. Rptr. 735 (1989);* [*15] Rest.2d Contracts § 205. A mortgage broker has fiduciary duties. *Wyatt v. Union Mortgage Co., (1979) 24 Cal. 3d. 773.* Further, In *Jonathan Neil & Associates, Inc. v Jones, (2004) 33 Cal. 4th 917,* the court stated:

> In the area of insurance contracts the covenant of good faith and fair dealing has taken on a particular significance, in part because of the special relationship between the insurer and the insured. The insurer, when determining whether to settle a claim, must give at least as much consideration to the welfare of its insured as it gives to its own interests. . . The standard is premised on the insurer's obligation to protect the insured's interests . . . *Id. at 937.*

59.    Likewise, there is a special relationship between a broker and borrower. "A person who provides brokerage services to a borrower in a covered loan transaction by soliciting lenders or otherwise negotiating a consumer loan secured by real property, is the fiduciary of the consumer...this fiduciary duty [is owed] to the consumer regardless of whom else the broker may be acting as an agent for . . . The fiduciary [*16] duty of the broker is to deal with the consumer in *good faith.* If the *broker knew or should have known that the Borrower will or has a likelihood of defaulting ... they have a fiduciary duty to the borrower not* to place them in that loan." (California Department of Real Estate, *Section 8: Fiduciary Responsibility,* www.dre.ca.gov). *[Emphasis Added].*

60. All Defendants willfully breached their implied covenant of good faith and fair dealing with Plaintiff when Defendants: (1) Failed to provide all of the proper disclosures; (2) Failed to provide accurate Right to Cancel Notices; (3) Placed Plaintiff into the current loan product without regard for other more affordable products; (4) Placed Plaintiff into a loan without following proper underwriting standards; (5) Failed to disclose to Plaintiff that she was going to default because of the loan being unaffordable; (6) Failed to perform valid and /or properly documented substitutions and assignments so that Plaintiff could ascertain her rights and duties; and (7) Failed to respond in good faith to Plaintiff's request for documentation of the servicing of her loan and the existence and content of relevant documents. Additionally, Defendants breached their implied covenant of good faith and fair dealing with Plaintiff when Defendants initiated foreclosure proceedings even without the right under an alleged power of sale because the purported assignment was not recorded and by willfully and knowingly financially profiting from their malfeasance. Under the Covenant of Good Faith and Fair Dealing, neither party is allowed to do anything which will injure the rights of the other party to receive benefits of the agreement. *(Andrews v. Mobile Aire Estates 125 Cal. App. 4th 578, 589 (2005), quoting Gruenberg v Aetna Ins. Co. 9 Cal. 3d 566, 573 (1973).)*

61. Under the law, every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement. *(Marsu, B.V. v Walt Disney Co., 185 F 3d. 932, 937 (9th Cir. 1999), quoting Carma Developers, Inc v Marathon Dev. Cal., Inc., 2 Cal 4th 342, 371 (1992).)* Plaintiff sufficiently placed Defendants on notice of Plaintiff's allegations.

## PLAINTIFF PROPERLY PLEAD VIOLATION OF TRUTH IN LENDING ACT 15 U.S.C. §1601 ET SEQ

62. Plaintiff hereby incorporates by reference, re-pleads and re-alleges each and every allegation contained in all of the paragraphs of the General Allegations and Facts Common to All Causes of Action as though the same were set forth herein.

63. This consumer credit transaction was subject to the Plaintiff's right of rescission as described by *15 U.S.C. § 1635*(a) and Regulation Z § 226.23 (12 C.F.R. § 226.23).

64. More particularly, the same Defendants violated *15 U.S.C. § 1635*(a) and Regulation Z § 226.23(b) with regards to the purported Notice of Right to Cancel. As a consequence of this action, the Notice of Right to Cancel documentation was not provided to Plaintiff or if furnished, to Plaintiff it failed to: Correctly identify the transaction; Clearly and conspicuously disclose the

Plaintiffs' Response to Defendants' Motion to Dismiss

Plaintiff's right to rescind the transaction three days after delivery of all required disclosures; Clearly and conspicuously disclose how to exercise the right to rescind the transaction, with a form for that purpose; Clearly and conspicuously disclose the effects of rescission; Clearly and conspicuously disclose the date the rescission period expired.

65. Furthermore, Plaintiff is informed and believes that Defendants violated TILA at the time of origination because, among other things: Multiple GFE's used to mislead and confuse borrower about actual terms of Notes; i.e. yield spread premium and/or broker's fees paid outside closing and additional unknown amounts in YSP/POC fees.

66. Plaintiff is informed and believes that Defendants' violation of the provisions of law rendered the credit transaction null and void, invalidates Defendants' claimed interest in the Subject Property, and entitles Plaintiff to damages as proven at trial.

67. Defendants contends that Plaintiff's TILA damages and rescission claims are time barred. (MTD, 5:22). It is a well-established rule that the doctrine of equitable tolling suspends the statute of limitations until borrowers discover or had reasonable opportunity to discover the fraud or the non-disclosures that form the basis of a TILA action. (*King v. California, 784 F.2d 910, 915 (9th Cir. 1986)*; see also, *Eubanks v. Liberty Mortgage Banking Ltd., 976 F. Supp. 171 (9th Cir. 2003)* (noting that TILA claims are subject to equitable tolling in instances of fraud).) District courts have discretion to adjust the limitations period in cases where the purpose of TILA would be frustrated otherwise. (See, *Pelayo v. Home Capital Funding, 2009 U.S. Dist. LEXIS 44453, *14-16 (S.D. Cal. May 22, 2009)*.) "The motion [to dismiss] should be granted 'only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled.'" (*Plascencia v. Lending 1st Mortg., 583 F. Supp. 2d 1090, 1098 (N.D. Cal. 2008)*, [*19] citing *Durning v. First Boston Corp., 815 F.2d 1265, 1268 (9th Cir. 1987)*; see also, *Huynh v. Chase Manhattan Bank, 465 F.3d 992, 1003-04 (9th Cir. 2006)* (holding that it is rarely appropriate to grant a Rule 12(b)(6) motion to dismiss if equitable tolling is at issue, given that the applicability of equitable tolling depends on matter outside of the pleadings and Court's review is limited to the complaint).) n1

> a. n1 The Plascencia court further held that the issue of equitable tolling must be considered when "the complaint, liberally construed in light of our 'notice pleading' system, adequately alleges facts showing the potential applicability of the equitable tolling doctrine." (Id., citing *Cervantes v. City of San Diego, 5 F.3d 1273, 1277 (9th Cir. 1993)*.)

Plaintiffs' Response to Defendants' Motion to Dismiss

17 of 24

68.     Here, Plaintiffs pled that the facts surrounding loan transaction subject to this litigation were purposefully hidden and continue to be hidden to this day. In California, the statute of limitation runs from actual discovery. (See, *Katz v. Bank of California, 640 F.2d 1024, 1025 (9th Cir. 1981)* citing *NLRB v. Don Burgess Constr. Corp., 596 F.2d 378, 382-383 (9th Cir. 1979).)* TILA does not permit constructive disclosure of terms, but specifically provides for actual, express disclosures to be made to the borrower by the creditor prior to and upon closing of the loan. (See, *15 U.S.C. § 1601* et seq.) Here, Defendants failed to provide the requisite TILA disclosures to the Plaintiffs at the inception of the loan. Plaintiff, by engaging licensed professionals to assist Plaintiff in the procurement of the note exercised due diligence. It was only after news reports of predatory lending practices came to the attention of Plaintiff that Plaintiff discovered concealment of TILA violations by Defendants within the past year, when Plaintiff engaged the services of a professional to examine the loan for improprieties. As such, Plaintiff's allegations adequately state the applicability of the equitable tolling doctrine. Thus, Plaintiff's TILA claims [*21] are not barred. *2009 U.S. Dist. Ct. Motions 875682; 2010 U.S. Dist. Ct. Motions LEXIS 7191*

## PLAINTIFF PROPERLY PLEAD INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

69.     The conduct committed by Defendants, driven as it was by profit at the expense of increasingly highly leveraged and vulnerable consumers who placed their faith and trust in the superior knowledge and position of Defendants, was extreme and outrageous and not to be tolerated by civilized society. Defendants either knew that their conduct would cause Plaintiff to suffer severe emotional distress, or acted in conscious and/or reckless disregard of the probability that such distress would occur.

70.     Plaintiff did in fact suffer severe emotional distress as an actual and proximate result of the conduct of Defendants as described hereinabove. As a result of such severe emotional distress, Plaintiff suffered economic and non economic harm and detriment, all to be shown according to proof at trial of this matter. Plaintiff demands that Defendants provide Plaintiff with release of lien on the lien signed by Plaintiff and secure to Plaintiff quite title; Plaintiff demands Defendants disgorge themselves of all enrichment received from Plaintiff as payments to Defendants based on the fraudulently secured promissory note in an amount to be calculated by Defendants and verified to Plaintiff; Plaintiff further demands that Defendants pay to Plaintiff an

amount equal to the amount Defendants intended to defraud Plaintiff of which amount Plaintiff calculated to be equal to $3,427,837.17.

## SUFFICIENCY OF PLEADING

71.     Plaintiff has sufficiently pled that relief can be granted on each and every one of the Complaint's causes of action. Federal Rule of Civ. Procedure 12(b)(6) provides for dismissal if a Plaintiff fails to state a claim upon which relief can be granted. A complaint should not be dismissed "unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of her claim which would entitle her to relief." *Housley v. U.S. (9th Cir. Nev. 1994) 35 F.3d 400, 401.* "All allegations of material fact in the complaint are taken as true and construed in the light most favorable to Plaintiff." *Argabright v. United States, 35 F.3d 1476, 1479 (9th Cir. 1996).*

72.     The Complaint includes a "short, plain statement, of the basis for relief." Fed. Rule Civ. Proc. 8(a). The Complaint contains cognizable legal theories, sufficient facts to support cognizable legal theories, and seeks remedies to which Plaintiff is entitled. *Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988); King v. California, 784 F.2d 910, 913 (9th Cir. 1986).* Moreover, the legal conclusions in the Complaint can and should be drawn from the facts alleged, and, in turn, the court should accept them as such. *Clegg v. Cult Awareness Network, 18 F.3d 752* (9th Cir, 1994). Lastly, Plaintiff's complaint contains claims and has a probable validity of proving a "set of facts" in support of their claim entitling them to relief. *Housley v. U.S. (9th Cir. Nev. 1994) 35 F.3d 400, 401.* Therefore, relief as requested herein should be granted.

## HEIGHTENED PLEADING STANDARDS

73.     It is offered to this court the very well known cases Bell Atlantic Corp. v. Twombly and Ashcroft v. Iqbal. Is the position of the Defendants and the Judge that a plaintiff must fully adjudicate his case in the original pleadings?

74.     In regards to a Pro Se Plaintiff, it is maintained by the Plaintiff that Bell Atlantic Corp. v. Twombly and Ashcroft v. Iqbal standards do not apply. The heightened pleading standards only apply to learned counsel.

75.     Ashcroft & Twombly overruled Conley v. Gibson. The issues within Bell Atlantic
Corp. v. Twombly and Ashcroft v. Iqbal address the heightened pleading standards of learned
counsel. In Kerns v. United States, the case addresses pro se litigants specifically. Kerns also
addresses Conley v Gibson, and Kerns v. United States has not been overturned.

76.     It is also maintained by Plaintiff that absolute proof is not needed at the initial stages
of this case, and only requires prima facia evidence.

## ONGOING CRIMINAL CONSPIRACY

77.     Defendants complain that the document is similar to other documents alleging
wrongdoing by banks and lending institutions. This begs a question, does the wrongdoing of
Defendants become somehow less wrong simply because they do it to everyone? Simply because
the lenders are accused by numerous plaintiffs of acting in concert and collusion, one with the
other, of the perpetration of predicate acts toward the furtherance of an ongoing criminal
enterprise intended to strip the people of this country of the equity in their property, and thereby,
deprive them of their homes, is hardly a valid objection. It seems Defendants, by complaining that
others have accused them of the same sorts of fraud should somehow render the claims made here
less valid. This also simply demonstrates the extent of their acts of theft and fraud. Plaintiff
suggests, instead of attacking the messenger, the court may consider convening a court of inquiry
to examine into the fraudulent practices of the Defendants and encourage the federal government
to pick up the mantel and prosecute the criminal wrongdoing of the banks and lending institutions.

## MORE DEFINITE STATEMENT

78.        Plaintiffs are willing to prepare a more definite statement for the court. Subsequent
to the filing of the original complaint, Plaintiffs have made inquiry and found evidence of
knowing and deliberate criminal acts by lenders intended to defraud Plaintiffs of Plaintiffs'
property and are prepared to file a more definite statement with the court.

## CONCLUSION

79.        Plaintiffs maintain that Defendants motion of dismissal is without merit, and that
counsel, in making said claim, has failed to speak with candor with the court.

**Respectfully Submitted,**

_Thomas Ryan_          Date 1/19/2011   _Karen Ryan_          Date 1/19/2011

**Thomas Ryan**                           **Karen Ryan**
**4446 Lazy Lane**                        **4446 Lazy Lane**
**San Jose, CA 95135**                    **San Jose, CA 95135**

STATE OF CALIFORNIA
COUNTY OF SANTA CLARA

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

CIVIL CODE § 1189

State of California

County of _Santa Clara_

On _1-19-2011_ before me, _Henley Shao, Notary Public_,
Date                          Here Insert Name and Title of the Officer

personally appeared _Thomas Edward Ryan and Karen Ann Ryan_
Name(s) of Signer(s)

HENLEY SHAO
COMM. # 1816679
NOTARY PUBLIC-CALIFORNIA
SANTA CLARA COUNTY
MY COMM. EXP. OCT. 10, 2012

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature: _____
Place Notary Seal Above                    Signature of Notary Public

─────────────── **OPTIONAL** ───────────────

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

### Description of Attached Document

Title or Type of Document: _____

Document Date: _____ Number of Pages: _____

Signer(s) Other Than Named Above: _____

### Capacity(ies) Claimed by Signer(s)

| Signer's Name: _____ | Signer's Name: _____ |
|---|---|
| ☐ Corporate Officer — Title(s): _____ | ☐ Corporate Officer — Title(s): _____ |
| ☐ Individual | ☐ Individual |
| ☐ Partner — ☐ Limited ☐ General | ☐ Partner — ☐ Limited ☐ General |
| ☐ Attorney in Fact | ☐ Attorney in Fact |
| ☐ Trustee | ☐ Trustee |
| ☐ Guardian or Conservator | ☐ Guardian or Conservator |
| ☐ Other: _____ | ☐ Other: _____ |
| Signer Is Representing: _____ | Signer Is Representing: _____ |

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

© 2010 National Notary Association • NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)          Item #5907

21A of 24

## VERIFICATION

We, Thomas and Karen Ryan, do swear and affirm that all statements made herein are true and accurate, in all respects, to the best of our knowledge.

Thomas & Karen Ryan
4446 Lazy Lane
San Jose, CA 95135

_Thomas Ryan_  1/19/2011          _Karen Ryan_  1/19/2011

Thomas Ryan                          Karen Ryan

The Persons above, who proved to me on the basis of satisfactory evidence to be the persons whose names are subscribed to this document and acknowledged to me that he/she executed the same in their authorized capacity and that by their signatures on this instrument who are the persons who executed this instrument.

We certify under PENALTY OF PERJURY under the laws of this State that the foregoing paragraph is true and correct.

Witness my hand and official seal.

HENLEY SHAO
COMM. # 1816679
NOTARY PUBLIC-CALIFORNIA
SANTA CLARA COUNTY
MY COMM. EXP. OCT. 10, 2012

**NOTARY PUBLIC IN AND FOR**
**THE STATE OF CALIFORNIA**

**Notary Seal**

## CERTIFICATE OF SERVICE

We, Thomas and Karen Ryan, do swear and affirm that we have served a signed copy of this Response to Defendants motion to dismiss to any and all Defendants by way of U.S.P.S. Certified mail # 7010 2780 0001 4667 3501 and return receipt on the 20th day of January , 2011.

BAC Home Loans Servicing, LP
C/O BRYAN CAVE LLP
Sean K. McElenney
Michael B. Dvoren
Two North Central Avenue, Suite 2200
Phoenix, AZ 85004-4406

_____ Date 1/19/2011    _____ Date 1/19/2011
Thomas Ryan                        Karen Ryan
4446 Lazy Lane                     4446 Lazy Lane
San Jose, CA 95135                 San Jose, CA 95135

The Persons above, who proved to me on the basis of satisfactory evidence to be the persons whose names are subscribed to this document and acknowledged to me that he/she executed the same in their authorized capacity and that by their signatures on this instrument who are the persons who executed this instrument.

We certify under PENALTY OF PERJURY under the laws of this State that the foregoing paragraph is true and correct.

Witness my hand and official seal.

_____    _____

**NOTARY PUBLIC IN AND FOR**              **Notary Seal**
**THE STATE OF CALIFORNIA**

STATE OF CALIFORNIA
COUNTY OF SANTA CLARA

Plaintiffs' Response to Defendants' Motion to Dismiss

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

CIVIL CODE § 1189

State of California

County of _Santa Clara_ }

On _January 19, 2011_ before me, _Carol A. deOlde - Notary_,
　　　　　Date　　　　　　　　　　　　Here Insert Name and Title of the Officer

personally appeared _Thomas Ryan & Karen Ryan_
　　　　　　　　　　　　　　　　　　Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**CAROL A. DEOLDE**
Commission # 1891823
Notary Public - California
Santa Clara County
My Comm. Expires Jun 5, 2014

Place Notary Seal Above

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature: _Carol A. deOlde_
　　　　　　　　Signature of Notary Public

---

**OPTIONAL**

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**
Title or Type of Document: _Certificate of Service_

Document Date: _January 19, 2011_　　　　Number of Pages: _____

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

| Signer's Name: _____ | Signer's Name: _____ |
|---|---|
| ☐ Corporate Officer — Title(s): _____ | ☐ Corporate Officer — Title(s): _____ |
| ☐ Individual | ☐ Individual |
| ☐ Partner — ☐ Limited ☐ General | ☐ Partner — ☐ Limited ☐ General |
| ☐ Attorney in Fact | ☐ Attorney in Fact |
| ☐ Trustee | ☐ Trustee |
| ☐ Guardian or Conservator | ☐ Guardian or Conservator |
| ☐ Other: _____ | ☐ Other: _____ |
| Signer Is Representing: _____ | Signer Is Representing: _____ |

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

© 2010 National Notary Association • NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)　　　　Item #5907

## CERTIFICATE OF SERVICE

We, Thomas and Karen Ryan, do swear and affirm that we have served a signed copy of this Response to Defendants motion to dismiss to any and all Defendants by way of U.S.P.S. Certified mail # 7010 2780 001 4667 3518 ____ and return receipt on the 20th day of January, 2011.

BAC Home Loans Servicing, LP
C/O BRYAN CAVE LLP
Bahareh Mostajelean
2Embarcadero Center, Suite 1410
San Francisco, CA 94111

_Thomas Ryan_ Date 1/19/2011 _Karen Ryan_ Date 1/19/2011

Thomas Ryan                          Karen Ryan
4446 Lazy Lane                       4446 Lazy Lane
San Jose, CA 95135                   San Jose, CA 95135

The Persons above, who proved to me on the basis of satisfactory evidence to be the persons whose names are subscribed to this document and acknowledged to me that he/she executed the same in their authorized capacity and that by their signatures on this instrument who are the persons who executed this instrument.

I certify under PENALTY OF PERJURY under the laws of this State that the foregoing paragraph is true and correct.

Witness my hand and official seal.

_____          _____

**NOTARY PUBLIC IN AND FOR**          **Notary Seal**
**THE STATE OF CALIFORNIA**

STATE OF CALIFORNIA
COUNTY OF SANTA CLARA

23 A

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

CIVIL CODE § 1189

State of California

County of *Santa Clara*

On *January 19, 2011* before me, *Carol A. deOlde - Notary*,
<span style="font-size:smaller">Date</span>   <span style="font-size:smaller">Here Insert Name and Title of the Officer</span>

personally appeared *Thomas Ryan & Karen Ryan*
<span style="font-size:smaller">Name(s) of Signer(s)</span>

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

> CAROL A. DEOLDE
> Commission # 1891823
> Notary Public - California
> Santa Clara County
> My Comm. Expires Jun 5, 2014

Place Notary Seal Above

Signature: *Carol A. deOlde*
<span style="font-size:smaller">Signature of Notary Public</span>

---

**OPTIONAL**

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**

Title or Type of Document: *Cert. of Service*

Document Date: *January 19, 2011*                Number of Pages: _____

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

| Signer's Name: _____ | Signer's Name: _____ |
|---|---|
| ☐ Corporate Officer — Title(s): _____ | ☐ Corporate Officer — Title(s): _____ |
| ☐ Individual | ☐ Individual |
| ☐ Partner — ☐ Limited ☐ General | ☐ Partner — ☐ Limited ☐ General |
| ☐ Attorney in Fact | ☐ Attorney in Fact |
| ☐ Trustee | ☐ Trustee |
| ☐ Guardian or Conservator | ☐ Guardian or Conservator |
| ☐ Other: _____ | ☐ Other: _____ |
| _____ | _____ |
| Signer Is Representing: _____ | Signer Is Representing: _____ |

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

© 2010 National Notary Association • NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)                Item #5907

## CERTIFICATE OF SERVICE

We, Thomas and Karen Ryan, do swear and affirm that we have served a signed copy of this
Response to Defendants motion to dismiss to any and all Defendants by way of U.S.P.S.
Certified mail # _____ and return receipt on the 20th day of
January, 2011.

CT Corporation
818 West 7th Street
Los Angeles, CA 90017

_____ Date 1/19/2011  _____ Date 1/19/2011

Thomas Ryan                    Karen Ryan
4446 Lazy Lane                 4446 Lazy Lane
San Jose, CA 95135             San Jose, CA 95135

The Persons above, who proved to me on the basis of satisfactory evidence to be the persons
whose names are subscribed to this document and acknowledged to me that he/she executed the
same in their authorized capacity and that by their signatures on this instrument who are the
persons who executed this instrument.

I certify under PENALTY OF PERJURY under the laws of this State that the foregoing
paragraph is true and correct.

Witness my hand and official seal.

_____        _____

**NOTARY PUBLIC IN AND FOR**              **Notary Seal**
**THE STATE OF CALIFORNIA**

STATE OF CALIFORNIA
COUNTY OF SANTA CLARA

23B

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

CIVIL CODE § 1189

State of California

County of _Santa Clara_ }

On _January 19, 2011_ before me, _Carol A. deOlde - Notary_,
    Date                          Here Insert Name and Title of the Officer

personally appeared _Thomas Ryan + Karen Ryan_
                      Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

CAROL A. DEOLDE
Commission # 1891823
Notary Public - California
Santa Clara County
My Comm. Expires Jun 5, 2014

Place Notary Seal Above

Signature: _Carol A. deOlde_
                      Signature of Notary Public

--------- **OPTIONAL** ---------

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**

Title or Type of Document: _Certificate of Service_

Document Date: _January 19, 2011_ _____ Number of Pages: _____

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

| Signer's Name: _____ | Signer's Name: _____ |
|---|---|
| ☐ Corporate Officer — Title(s): _____ | ☐ Corporate Officer — Title(s): _____ |
| ☐ Individual | ☐ Individual |
| ☐ Partner — ☐ Limited ☐ General | ☐ Partner — ☐ Limited ☐ General |
| ☐ Attorney in Fact | ☐ Attorney in Fact |
| ☐ Trustee | ☐ Trustee |
| ☐ Guardian or Conservator | ☐ Guardian or Conservator |
| ☐ Other: _____ | ☐ Other: _____ |
| Signer Is Representing: _____ | Signer Is Representing: _____ |

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

© 2010 National Notary Association • NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)      Item #5907

Borrower: Tom and Karen Ryan
Loan # 148938028

(25)

OMB Approval No. 2502-0265

| A. Settlement Statement | | | | | |
|---|---|---|---|---|---|
| B. Type of Loan | | | | | |

**First American Title Company**
**Estimated Statement**

| 1-5. Loan Type | |
|---|---|
| 6. | Fife Number 4402 |
| 7. | Loan Number: 148938028 |
| 8. | Mortgage Insurance Case Number |

C. Note: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(POC)" were paid outside this closing; they are shown here for informational purposes and are not included in the totals.

D- Name of Borrower: Clear Vision Properties, LLC Becky Mundt, President

E. Name of Seller: Thomas and Karen Ryan
4446 Lazy Lane San Jose Ca 95135

F. Name of Lender:

G. Property Location: 301 Gibson Drive Unit 214 Roseville Ca 95678

H. Settlement Agent: First American Title Company
Address: 330 Soquel Avenue, Santa Cruz, CA 95062
Date: 06/15/2010 Print Date: 4-1-10, 9:14 AM

Place of Settlement Address: 330 Soquel Avenue, Santa Cruz, CA 95062
Disbursement Date: Signing Date:

Estimated Settlement

| J. Summary of Borrower's Transaction | | K. Summary of Seller's Transaction | |
|---|---|---|---|
| 100. Gross Amount Due From Borrower | | 400. Gross Amount Due To Seller | |
| 101. Contract Sales Price | 170,000 | 401. Contract Sales Price | 170,000 |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement charges to borrower (line 1 400) | 5100 | 403. Total Deposits | |
| 104. | | 404. | |
| 105. | | 405. | |
| Adjustments for items paid by seller in advance | | Adjustments for items paid by seller in advance | |
| 106. City/town taxes | | 406. City/town taxes | |
| 107. County taxes | | 407. County taxes | |
| 108. Assessments | | 408. Assessments | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 113. | | 413. | |
| 114. | | 414. | |
| 115. | | 415. | |
| 120. Gross Amount Due From Borrower | | 420. Gross Amount Due To Seller | 170,000 |
| 200. Amounts Paid By Or In Behalf Of Borrower | | 500. Reductions In Amount Due To Seller | |
| 201. Deposit or earnest money | 1000 | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | | 502. Settlement charges (line 1 400) | 13,318.95 |
| 203. Existing loan(s) taken subject | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first mortgage loan - TBD - To Be Determined | |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. | | 506. 1st 1/2 09-10 Taxes + penalty to San Joaquin County Tax | 2,869.04 |
| 207. | | 507. HOA | 303 |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 210. City/town taxes | | 510. City/town taxes | |
| 211. County taxes | | 511. County taxes 01/01/10 to 01/15/10 @$5180.08/yr | 198.69 |
| 212. Assessments | | 512. Assessments | |
| 213. | | 513. Credit towards Closing Costs | 5100 |
| 214. | | 514. | |
| 215. | | 515. | |
| 220. Total Paid By/For Borrower | | 520. Total Reduction Amount Due seller | |
| **163,900** | | | |
| 300. Cash At Settlement From/To Borrower | | 600. Cash At Settlement To/From Seller | |
| | | **145,210.32** | |

COPY
Borrower: Tom and Karen Ryan
Loan # 148938028

File No.   4402

32

| L. Settlement Charges | | |
|---|---|---|
| 700. Total Sales/Broker's Commission based on price $170,000 @ 6.0000% = $10,200 | Paid From Borrower's Funds at Settlement | Paid From Seller's Funds at Settlement |
| Division of Commission (line 700) as follows | | |
| 701 . $8,400.00 to Vanguard Realtors | | |
| 702. $8,400.00 to Selling Agent | | |
| 703. Commission paid at Settlement | | 10,200 |
| 704 . | | |
| 800. Items Payable in Connection with Loan   B of A 2nd loan number 149716450 | | 3000 |
| 801 . Loan Origination Fee | | |
| 802. Loan Discount | | |
| 803. Appraisal Fee | | |
| 804. Credit Report | | |
| 805. Lender's Inspection Fee | | |
| 806. Mortgage Insurance Application Premium | | |
| 807. Assumption Fee | | |
| 808. | | |
| 809. | | |
| 810. | | |
| 811. | | |
| 812. | | |
| 813. | | |
| 814. | | |
| Supplemental Summary | | |
| 900. Items Required by Lender to be Paid in Advance | | |
| 901. Interest | | |
| 902. | | |
| 903. Hazard Insurance Premium for | | |
| 904. | | |
| 905. | | |
| Supplemental Summary | | |
| 1000. Reserves Deposited with Lender | | |
| 1001. Hazard Insurance | | |
| 1002. Mortgage Insurance | | |
| 1003. City Property Taxes | | |
| 1004. County Property Taxes | | |
| 1005. Annual assessments | | |
| 1006. | | |
| 1007. | | |
| 1008. Aggregate Accounting Adjustment | | |
| 1100. Title Charges | | |
| 1101. Settlement or closing fee - First American Title Company | | 1,025.00 |
| 1102. Abstract or title search | | |
| 1103. Title examination | | |
| 1 104. Title Insurance Binder | | |
| 1105. Document Fee | | |
| 1106. Notary Fee | | |
| 1107. Attorney Fee | | |
| (includes above item numbers: ) | | |
| 1 108. Title Insurance - See supplemental page for breakdown of individual fees and payees | | 1,040.00 |
| (includes above item numbers: ) | | |
| 1109. Lender's coverage $ | | |
| 1110. Owner's coverage $170,000Premium: $1,040.00 | | |
| 1111. 'Refundable Paid - First American Title Company | | 500.00 |
| 1112. | | |
| 1113. | | |
| 1114. | | |
| 1115. | | |
| 1116. | | |
| 1117. | | |
| 1200. Government Recording and Transfer Charges | | |
| 1201. Recording fees: | | |
| 1202. 'City/county tax/stamps: Deed $308.00 Mortgage $0.00 | | 308.00 |
| 1203. State tax/stamps: | | |
| 1204. | | |
| 1205. | | |
| 1206. | | |
| 1300. Additional Settlement Charges | | |
| 1301. Survey to | | |
| 1302. Pest Inspection to | | |
| 1303. Special Hazard Disclosure (CA)Estimate to TBD - To Be Determined | | 123.95 |
| 1 304. Notary/Signing Fee - First American Title Company | | 125.00 |
| 1305. | | |
| 1306. | | |
| 1 T3T2. | | |
| 1313. | | |

Supplemental Page
HUD-1 Settlement Statement

File No.
4402-3402042

## First American Title Company
### Estimated Statement

Loan
No.148938028

Settlement Date:

Borrower Name & Address: Clear Vision Properties LLC, Becky Mundt

Seller Name & Address: Thomas and Karen Ryan 4446 Lazy Lane
San Jose Ca 95135

| Section L. Settlement Charges continued | Paid From Borrower's Funds at Settlement | Paid From Seller's Funds at Settlement |
|---|---|---|
| 1108.    Supplemental Summary | | |
| a) Eagle Owners Policy - First American Title Company | | 1,048.00 |
| 1202.    Supplemental Summary | | |
| a) County Documentary Transfer Tax - First American Title Company | | 308.00 |

| The following Section is restated from the Settlement Statement Page 1 | | | |
|---|---|---|---|
| 300. Cash At Settlement From/To Borrower | | 600. Cash At Settlement To/From Seller | |
| 301. Gross amount due from Borrower (line 120) | | 601. Gross Amount due to Seller (line 420) | 170,000 |
| 302. Less amounts paid by/for Borrower (line 220) | | 601. Less reductions in amounts due to Seller (line 520) | 170,000 |
| 303. | | 603. | |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and distributions made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

## TRUTH-IN-LENDING DISCLOSURE STATEMENT
(THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

| | | | |
|---|---|---|---|
| **Applicants:** | Karen Ryan | **Prepared By:** | Spectrum Financial Group, Inc. |
| | Thomas Ryan | | 3100 W Ray Road, suite 205 |
| **Property Address:** | 301 Gibson Drive Unit 412 | | Chandler, AZ 85226 |
| | Roseville, CA 95678 | | 480-505-7517 |
| **Application No:** | Ryan-Venu | **Date Prepared:** 11/15/2006 | |

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | AMOUNT FINANCED | TOTAL OF PAYMENTS |
|---|---|---|---|
| The cost of your credit as a yearly rate | The dollar amount the credit will cost you | The amount of credit provided to you or on your behalf | The amount you will have paid after making all payments as scheduled |
| * 7.738 % | $ * 523,872.15 | $ * 296,996.55 | $ * 820,868.70 |

☑ **REQUIRED DEPOSIT:** The annual percentage rate does not take into account your required deposit

**PAYMENTS:** Your payment schedule will be:

| Number of Payments | Amount of Payments ** | When Payments Are Due | Number of Payments | Amount of Payments ** | When Payments Are Due | Number of Payments | Amount of Payments ** | When Payments Are Due |
|---|---|---|---|---|---|---|---|---|
| | | Monthly Beginning: | | | Monthly Beginning: | | | Monthly Beginning: |
| 60 | 1,894.50 | 01/01/2007 | | | | | | |
| 60 | 1,928.06 | 01/01/2012 | | | | | | |
| 239 | 2,465.13 | 01/01/2017 | | | | | | |
| 1 | 2,467.83 | 12/01/2036 | | | | | | |

☐ **DEMAND FEATURE:** This obligation has a demand feature.
☑ **VARIABLE RATE FEATURE:** This loan contains a variable rate feature. A variable rate disclosure has been provided earlier.

**CREDIT LIFE/CREDIT DISABILITY:** Credit life insurance and credit disability insurance are not required to obtain credit, and will not be provided unless you sign and agree to pay the additional cost.

| Type | Premium | Signature |
|---|---|---|
| Credit Life | | I want credit life insurance. | Signature: |
| Credit Disability | | I want credit disability insurance. | Signature: |
| Credit Life and Disability | | I want credit life and disability insurance. | Signature: |

**INSURANCE:** The following insurance is required to obtain credit:
☐ Credit life insurance ☐ Credit disability ☐ Property insurance ☐ Flood insurance
You may obtain this insurance from anyone you want that is acceptable to creditor
☑ If you purchase ☑ property ☐ flood insurance from creditor you will pay $ _____ for a one year term.
**SECURITY:** You are giving a security interest in: 301 Gibson Drive Unit 412, Roseville CA 95678
☑ The goods or property being purchased ☐ Real property you already own.
**FILING FEES:** $ 39.00
**LATE CHARGE:** If a payment is more than 15 days late, you will be charged 5.000 % of the payment
**PREPAYMENT:** If you pay off early, you
☐ may ☑ will not have to pay a penalty.
☐ may ☑ will not be entitled to a refund of part of the finance charge.
**ASSUMPTION:** Someone buying your property
☐ may ☐ may, subject to conditions ☑ may not assume the remainder of your loan on the original terms.
See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties
☑ * means an estimate ☑ all dates and numerical disclosures except the late payment disclosures are estimates.
* * NOTE: The Payments shown above include reserve deposits for Mortgage Insurance (if applicable), but exclude Property Taxes and Insurance.

THE/UNDERSIGNED ACKNOWLEDGES RECEIVING A COMPLETED COPY OF THIS DISCLOSURE.

_Karen Ryan_ 11/27/06
Karen Ryan (Applicant) (Date)

_Thomas E Ryan_ 11/27/06
Thomas Ryan (Applicant) (Date)

(Applicant) (Date)

(Applicant) (Date)

(Lender) (Date)

Calyx Form - til.hp (02/96)

**A Settlement Statement**

| B Type of Loan |
|---|
| 1 5 Loan Type Conv Unins |
| 6 File Number 3403 B276186412 |
| 7 Loan Number 3001863361 |
| 8 Mortgage Insurance Case Number |

## First American Title Company
### Final Statement

**C** Note This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked (POC) were paid outside this closing they are shown here for informational purposes and are not included in the totals.

**D** Name of Borrower Karen Ryan, Thomas Ryan
4646 Lazy Lane, San Jose, CA 95135

**E** Name of Seller Villas at Gellorm, LP
230 W 5th Street Tempe, AZ 85281

**F** Name of Lender Aegis Wholesale Corporation
2111 East Highland Avenue, Suite 280
Phoenix, AZ 85016

**G** Property Location 301 Gibson Drive #412, Roseville, CA 95678

**H** Settlement Agent First American Title Company
Address 2200 A Douglas Blvd , Suite 275, Roseville, CA 95661

Place of Settlement Address 2200 A Douglas Blvd , Suite 275, Roseville, CA 95661

Settlement Date 01/10/2007

Prnt Date 01/10/2007, 3 30 PM

Disbursement Date 01/10/2007

| J Summary of Borrower's Transaction | | K Summary of Seller's Transaction | |
|---|---|---|---|
| 100 Gross Amount Due From Borrower | | 400 Gross Amount Due To Seller | |
| 101 Contract Sales Price | 378 900 00 | 401 Contract Sales Price | 378,900 00 |
| 102 Personal Property | | 402 Personal Property | |
| 103 Settlement charges to borrower (line 1400) | 11 887 10 | 403 Total Deposits | |
| 104 Interest on Loan 2nd Aegis Wholesale Corporation | 266 49 | 404 | |
| 105 Supplemental Summary | 808 50 | 405 | |
| Adjustments for items paid by seller in advance | | Adjustments for items paid by seller in advance | |
| 106 City/town taxes | | 406 City/town taxes | |
| 107 County taxes | | 407 County taxes | |
| 108 Assessments | | 408 Assessments | |
| 109 | | 409 | |
| 110 | | 410 | |
| 111 | | 411 | |
| 112 | | 412 | |
| 113 | | 413 | |
| 114 | | 414 | |
| 115 | | 415 | |
| 120 Gross Amount Due From Borrower | 391,489 09 | 420 Gross Amount Due To Seller | 378,900 00 |
| 200 Amounts Paid By Or In Behalf of Borrower | | 500 Reductions In Amount Due to Seller | |
| 201 Deposit or earnest money | 46 882 04 | 501 Excess deposit (see instructions) | |
| 202 Principal amount of new loan(s) | 303 120 00 | 502 Settlement charges (line 1400) | 43 525 50 |
| 203 Existing loan(s) taken subject | | 503 Existing loan(s) taken subject | |
| 204 New Loan to File from Aegis Wholesale Corporation | 37 890 00 | 504 Payoff of first mortgage loan Cona Bank N A | 331 585 50 |
| 205 | | 505 Payoff of second mortgage lien | |
| 206 | | 506 | |
| 207 | | 507 | |
| 208 | | 508 | |
| 209 | | 509 | |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 210 City/town taxes | | 510 City/town taxes | |
| 211 County taxes | | 511 County taxes | |
| 212 Assessments | | 512 Assessments | |
| 213 Seller Credit 1% | 3 789 00 | 513 Seller Credit 1% | 3 789 00 |
| 214 | | 514 | |
| 215 | | 515 | |
| 216 | | 516 | |
| 217 | | 517 | |
| 218 | | 518 | |
| 219 | | 519 | |
| 220 Total Paid By/For Borrower | 391,681 04 | 520 Total Reduction Amount Due Seller | 378,900 00 |
| 300 Cash At Settlement From/To Borrower | | 600 Cash At Settlement To/From Seller | |
| 301 Gross amount due from Borrower (line 120) | 391,489 09 | 601 Gross amount due to Seller (line 420) | 378,900 00 |
| 302 Less amounts paid by/for Borrower (line 220) | 391,681 04 | 602 Less reductions in amounts due to Seller (line 520) | 378,900 00 |
| 303 Cash ( From) (X To) Borrower | 191 95 | 603 Cash ( To) ( From) Seller | |

The HUD 1 Settlement Statement which I have prepared is a true and accurate account of this transaction I have caused or will cause the funds to be disbursed in accordance with this statement

Settlement Agent _____ Date _____

* See Supplemental Page for details

Jan-16-07    04 39pm   From-First American Title Company Home Center   916 786 8613    P 005/018   F-940

| | Paid From Borrower's Funds at Settlement | Paid From Seller's Funds at Settlement |
|---|---|---|
| **L. Settlement Charges** | | |
| 700 Total Sales/Broker's Commission based on price $375,900 00 @ 9 5000% = $35995 60 | | |
| Division of Commission (line 700) as follows | | |
| 701 | | |
| 702 $35 995 50 to AZ Real Estate Concepts Inc | | |
| 703 Commission paid at Settlement | | 35 995 50 |
| 704 | | |
| **800 Items Payable in Connection with Loan** | | |
| 801 Loan Origination Fee | | |
| 802 Loan Discount | | |
| 803 Appraisal Fee | | |
| 804 Credit Report | | |
| 805 Lender's Inspection Fee | | |
| 806 Mortgage Insurance Application Premium | | |
| 807 Assumption Fee | | |
| 808 Tax Service Fee Aegis Wholesale Corporation | 80 00 | |
| 809 Flood Certification Fee Aegis Wholesale Corporation | 6 75 | |
| 810 Underwriting Fee Aegis Wholesale Corporation | 595 00 | |
| 811 MERS Fee Aegis Wholesale Corporation | 3 60 | |
| 812 Yield Spread Premium by Aegis Spectrum Financial Group Inc POC $ 57 80 | | |
| 813 Loan Origination Fee Spectrum Financial Group Inc | 3 081 20 | |
| 814 Processing Fee Spectrum Financial Group Inc | 495 00 | |
| Supplemental Summary | 100 00 | |
| **900 Items Required by Lender to be Paid in Advance** | | |
| 901 Interest 01/10/07 to 02/01/07 @$56 056400/day Aegis Wholesale Corporation | 1 233 24 | |
| 902 | | |
| 903 Hazard Insurance Premium for | | |
| 904 | | |
| 905 | | |
| Supplemental Summary | | |
| **1000 Reserves Deposited with Lender** | | |
| 1001 Hazard Insurance | | |
| 1002 Mortgage Insurance | | |
| 1003 City Property Taxes | | |
| 1004 County Property Taxes 7 mo(s) @$185 33/mo | 1 288 51 | |
| 1005 Annual assessments | | |
| 1006 | | |
| 1007 | | |
| 1008 Aggregate Accounting Adjustment | | |
| **1100 Title Charges** | | |
| 1101 Settlement or closing fee First American Title Company | 472 50 | |
| 1102 Abstract or title search | | |
| 1103 Title examination | | |
| 1104 Title Insurance Binder | | |
| 1105 Document Fee | | |
| 1106 Notary Fee | | |
| 1107 Attorney Fee | | |
| (includes above item numbers ) | | |
| 1108 Title Insurance – See supplemental page for breakdown of individual fees and payees | 1 207 54 | |
| (includes above item numbers ) | | |
| 1109 *Lender's coverage $303 120 00 Premium $650 00 | | |
| 1110 Owner's coverage $376 900 00 Premium $857 34 | | |
| 1111 Endorsement 105 First American Title Company | 100 00 | |
| 1112 Special Messenger Service First American Title Company | 30 00 | |
| 1113 Wire Transfer Fee First American Title Company | 30 00 | 30 00 |
| 1114 Electronic Document Download ($50/sol) First American Title Company | 100 00 | |
| 1115 | | |
| 1116 | | |
| 1117 | | |
| **1200 Government Recording and Transfer Charges** | | |
| 1201 Recording fees | | |
| 1202 *City/county tax/stamps Deed $416 90 Mortgage $0 00 | 416 90 | |
| 1203 State tax/stamps | | |
| 1204 Recording Services | 230 00 | |
| 1205 | | |
| 1206 | | |
| **1300 Additional Settlement Charges** | | |
| 1301 Survey to | | |
| 1302 Pest Inspection to | | |
| 1303 Capital Contribution to Venu at Galeria Homeowners Association | 504 26 | |
| 1304 Association Dues for Fob to Venu at Galeria Homeowners Association | 252 13 | |
| 1305 Transfer Fee to VierraMoore Inc | 50 00 | |
| 1306 Develop Impact/Community Benefit Fee to City of Roseville Planning Division | | 5 000 00 |
| 1307 Property Disclosure Report to Property Disclosure Services Inc | 50 00 | |
| 1308 Warranty Expense Fee to Villas at Galleria LP | | 500 00 |
| 1309 Additional Funds Due to Avenue Communities LLC | | 2,000 00 |
| 1310 Prorated HOA Dues COE to 2/1/2007 to Villas at Galleria LP | 178 93 | |
| 1311 Prorated Property Taxes COE to 0/30/07 to Villas at Galleria LP | 811 94 | |
| 1312 Notary/Signing Fee to Lupe Winans | 150 00 | |
| 1313 | | |
| 1314 | | |
| Supplemental Summary | | |
| 1400 Total Settlement Charges (enter on lines 103, Section J and 502, Section K) | 11 597 10 | 43,525 50 |

* See Supplemental Page for details