Thomas & Karen Ryan
4446 Lazy Lane
San Jose, CA 95135
(408) 274-7811
karen.ryan45@gmail.com





FILED

MAR - 2 2011

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY
DEPUTY CLERK

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

THOMAS AND KAREN RYAN

Plaintiffs,

vs.

BAC Home Loans Servicing, LP

Defendant

No. 2:10-cv-02928-WBS-GGH

**OBJECTIONS to MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATIONS**

Hon. Gregory G. Hollows

March 1, 2011

Plaintiffs, Thomas and Karen Ryan, come before the court to object, as requested by the court, to the Magistrate Judge's Findings and Recommendations to dismiss Plaintiffs' action against BAC Home Loans Servicing, LP on the following grounds:

1) Plaintiffs, appearing pro se, were denied permission to file electronically in the Eastern District of California, Sacramento Division on 1/5/2011. Having to serve and file documents non-electronically puts Plaintiffs at a grave disadvantage. Plaintiffs are not able to respond to the court in a timely manner whereas Defendant's attorneys can instantly file their motions and responses. Plaintiffs, on the other hand, must get the documents notarized, copied, mailed, and served to all parties, taking a significantly more amount of time to complete.

Plaintiffs also suffer a financial disadvantage since it is costly to notarize signatures on documents, serve the defendants by certified USPS mail, and have a servicing company file documents with the court.

2) Plaintiffs made an honest mistake in not appearing at the hearing scheduled for February 17, 2011. Plaintiffs filed a Request in the court on February 15, 2011 for the scheduled hearing to be completed through submission of paperwork and not oral arguments. It is a disadvantage to the Plaintiffs to have to argue their case in front of a Judge, against a Federally Practiced Attorney. Plaintiffs do not have the experience and lack the same tools the Defendants Attorneys have, and would be unfairly prejudiced if Plaintiffs had to proceed orally. Plaintiffs believed that a Request before the court was sufficient, rather than a Motion.

In said Request, Plaintiffs' Prayer contained an order from the court absolving Plaintiffs from presenting oral arguments at hearing, and only appear through their paperwork. Plaintiffs believed the court had to rule on the request before proceeding.

Plaintiffs did not know they could appear telephonically as did the Defendants attorney. In reading the Eastern Division of California Local Rules such information was not found. Plaintiffs have made a great effort to read, honor, and follow the Eastern District of California's Local Rules. This is a daunting responsibility given the great number of rules/pages to consider. This is another reason why absolving Plaintiffs from presenting oral arguments is valid.

3) The Findings and Recommendations document states that "Plaintiffs have not provided any facts indicating that they made a qualified written request to BAC Home Loans, and that BAC Home Loans failed to proved information relating to the servicing of the loan." (p. 8, lines 12-21.) Plaintiffs made a qualified written request to BAC Home Loans Servicing on April 20, 2010 through Stamatakis and Thalji. Attached are:

Exhibit A- QWR from Stamatakis and Thalji, First Mortgage Loan #14938028

Exhibit B- QWR from Stamatakis and Thalji, Second Mortgage Loan # 14971650

Exhibit C- BAC Home Loans letter of Receipt of QWR

Exhibit D- BAC Home Loans response

The extensive questions to discover the truth in the qualified written requests were not responded to in good faith by the Defendant. Defendant's response seems to avoid deliverance of the facts, and appears to be taken from a standardized form created to avoid transparency. Plaintiffs were asking BAC Home Loans to disclose only facts surrounding Plaintiffs loan but were only given vague responses.

Plaintiffs move the court for reconsideration and leave to file an Amended Complaint E. D. Cal. L. R. 230 (j) in order to respond more completely to the courts requests and demands.

Respectively submitted,

_Thomas Ryan_ 3/1/11          _Karen Ryan_ 3/1/11

Thomas Ryan                          Karen Ryan

Verification

We, Thomas Ryan and Karen Ryan, do swear and affirm that all statements made herein are true and accurate, in all respects, to the best of our knowledge.


_Thomas Ryan_ Date 3/1/11          _Karen Ryan_ Date 3/1/11
Thomas Ryan                        Karen Ryan
4446 Lazy Lane                     4446 Lazy Lane
San Jose, CA 95135                 San Jose, CA 95135


The Persons above, who proved to me on the basis of satisfactory evidence to be the persons whose names are subscribed to this document and acknowledged to me that he/she executed the same in their authorized capacity and that by their signature on this instrument who are the persons who executed this instrument.

I certify under PENALTY OF PERJURY under the laws of this State that the foregoing paragraph is true and correct.


Witness my hand and official seal.


**NOTARY PUBLIC IN AND FOR**          **Notary Seal**

**THE STATE OF CALIFORNIA**

- 4 -

# CALIFORNIA ALL-PURPOSE
# CERTIFICATE OF ACKNOWLEDGMENT

State of California

County of _Santa Clara_

On _March 1, 2011_ before me, _Cheryl Mclaughlin Notary Public_,
(Here insert name and title of the officer)

personally appeared _Thomas Ryan and Karen Ryan_.

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Signature of Notary Public

(Notary Seal)

CHERYL MC LAUGHLIN
Comm. No.1895226
NOTARY PUBLIC · CALIFORNIA
SANTA CLARA COUNTY
My Comm. Expires July 27, 2014

---

## ADDITIONAL OPTIONAL INFORMATION

### INSTRUCTIONS FOR COMPLETING THIS FORM
*Any acknowledgment completed in California must contain verbiage exactly as appears above in the notary section or a separate acknowledgment form must be properly completed and attached to that document. The only exception is if a document is to be recorded outside of California. In such instances, any alternative acknowledgment verbiage as may be printed on such a document so long as the verbiage does not require the notary to do something that is illegal for a notary in California (i.e. certifying the authorized capacity of the signer). Please check the document carefully for proper notarial wording and attach this form if required.*

DESCRIPTION OF THE ATTACHED DOCUMENT

_Objections to Magistrate_
(Title or description of attached document)

_Judges Findings and_
(Title or description of attached document continued)

_Recommendations_
Number of Pages _____ Document Date _3-1-11_

_____
(Additional information)

- State and County information must be the State and County where the document signer(s) personally appeared before the notary public for acknowledgment.
- Date of notarization must be the date that the signer(s) personally appeared which must also be the same date the acknowledgment is completed.
- The notary public must print his or her name as it appears within his or her commission followed by a comma and then your title (notary public).
- Print the name(s) of document signer(s) who personally appear at the time of notarization.
- Indicate the correct singular or plural forms by crossing off incorrect forms (i.e. he/she/they- is /are ) or circling the correct forms. Failure to correctly indicate this information may lead to rejection of document recording.
- The notary seal impression must be clear and photographically reproducible. Impression must not cover text or lines. If seal impression smudges, re-seal if a sufficient area permits, otherwise complete a different acknowledgment form.
- Signature of the notary public must match the signature on file with the office of the county clerk.
  - ❖ Additional information is not required but could help to ensure this acknowledgment is not misused or attached to a different document.
  - ❖ Indicate title or type of attached document, number of pages and date.
  - ❖ Indicate the capacity claimed by the signer. If the claimed capacity is a corporate officer, indicate the title (i.e. CEO, CFO, Secretary).
- Securely attach this document to the signed document

CAPACITY CLAIMED BY THE SIGNER
- ☐ Individual (s)
- ☐ Corporate Officer

  _____
  (Title)
- ☐ Partner(s)
- ☐ Attorney-in-Fact
- ☐ Trustee(s)
- ☐ Other _____

Scott D. Stamatakis, Esquire#
Sami Thalji, Esquire*+
Melissa Thalji, Esquire**
James J. Wimsatt, Esquire~
Robert H. Bonanno, Esquire^
Bruce R. Insana, Esquire^

*Consumer Justice Attorneys*
# STAMATAKIS + THALJI
www.MYINJURY.com
www.MYFORECLOSUREATTORNEY.com

\# Managing Partner
\* Former Prosecutor
\+ Licensed General Contractor
\*\* Certified Mediator
\~ Licensed in FL | D.C. | MD
^ Of Counsel
MyInjury™
MyForeclosureAttorney™

---

**DATE:**     **APRIL 20, 2010**

**VIA:**     **VIA CERTIFIED MAIL RECEIPT #: 7009 3410 0001 7546 0078**

**TO:**     **BAC HOME LOANS SERVICING LP**
            **PO BOX 5170. SIMI VALLEY, CA 93062**

**RE:**     **RESPA "QUALIFIED WRITTEN REQUEST," COMPLAINT, DISPUTE & VALIDATION OF DEBT LETTER & TILA REQUEST AS DEFINED BY THE REAL ESTATE SETTLEMENT PROCEDURES ACT, 12 U.S.C. § 2605(E). LOAN NO.: 148938028 BORROWER NAME(S): THOMAS RYAN, KAREN RYAN PROPERTY ADDRESS: 301 GIBSON, UNIT 412, ROSEVILLE, CA 95678**

Dear BAC HOME LOANS SERVICING LP:

We write to question the accounting and servicing of the above referenced mortgage and to assist our mutual client in understanding and clarifying the various charges, credits, debits, transactions, reversals, actions, payments, records and analyses related to the servicing of their loan from its origination to the present date. Our client has executed a Limited Power of Attorney authorizing us to make these inquiries, act on their behalf, and receive all requested information, including any data deemed confidential or restricted. A copy of the Limited Power of Attorney has been included with this letter.

Our client is very concerned about the reported predatory lending and servicing schemes that mortgage companies and/or anyone who has held a beneficial interest in mortgage loans have been practicing; abuses that are targeting uninformed consumers, the uneducated and disadvantaged, the elderly and minority Americans. Our client is concerned that they may be a victim of such abuses.

As a borrower, our client is worried about (a) potential fraudulent and deceptive practices by unscrupulous mortgage brokers, (b) sales and transfers of mortgage servicing rights, (c) deceptive and fraudulent servicing practices to enhance balance sheets, and (d) deceptive, abusive and fraudulent accounting practices, any one of which may have negatively affected their credit rating, mortgage account and/or the debt or payments that are their legal obligation.

Because of this and other reasons that leave our client to question if they may be a victim of predatory lending, we dispute the validity of the current debt you claim our client owes. By debt, we refer to the principal balance claimed owed, the calculated monthly payment, calculated escrow payment and any fees claimed to be owed by you or any trust or entity you may represent.

---

*1*

**13904 N. Dale Mabry Highway, Suite 301, Tampa, Florida 33618**
**2451 McMullen Booth Road, Suite 202, Clearwater, FL 33759**
**866.479.6946 *(toll free)* | 813.282.9330 *(tele)* | 813.282.8648 *(fax)***
**Please Reply to: P.O. Box 341499, Tampa, Florida 33694**
**Email: ContactUs@MYINJURY.com**

To date, the documents and information that we possess and have received from you, and the conversations with your service representatives cannot answer our client's many questions. To independently validate the debt, we must conduct a complete examination, review, audit and accounting of our client's mortgage loan from its inception through the present date.

We request, also, that you conduct your own investigation and audit of this account, since its inception, to validate the debt you currently claim is owed to you, accurately and to the penny. It is recommended that you do not merely rely on previous services or originators records, assurances or indemnity agreements.

Upon receipt of this letter, please refrain from reporting any negative credit information (if any) to any credit reporting agency based in any way on these requests.

Potential abuses by you or previous servicers could have deceptively, wrongfully, unlawfully and/or illegally resulted in one or all of the following:

1. Improperly increased the amounts of the monthly payments;

2. Incorrectly increased the principal balance owed;

3. Inaccurately increased the escrow payments;

4. Incorrectly increased the amounts applied and attributed toward interest on the account;

5. Erroneously decreased the amounts applied and attributed toward principal on the account; and/or,

6. Assessed, charged and/or collected fees, expenses and miscellaneous charges that are not legal obligations under the mortgage, note and/or deed of trust.

We want to ensure that our client has not been the victim of such predatory practices. Therefore, our client authorized a thorough review, examination, accounting and audit of their mortgage loan # 148938028 by mortgage auditing and predatory lending experts. This exam and audit will review the mortgage loan file from the date of their initial contact, application and the origination of the loan to the present date written above.

As such, please treat this letter as a Qualified Written Request under the Real Estate Settlement Procedures Act, codified as Title 12 § 2605 (e)(l)(B) (e) and Reg. X § 3500.21(f)2 of the United States Code as well as a request under Truth In Lending Act (TILA) 15 U.S.C. § 1601, et seq. RESPA provides substantial penalties and fines for non-compliance or failure to completely and accurately answer the questions provided in this letter within sixty (60) days of its receipt.

In order to conduct the examination and audit of this loan, please provide full and immediate disclosure including copies of all pertinent information and documentation regarding the loan. The documents requested and answers to these questions should ensure that the loan:

1. Was originated in lawful compliance with all federal and state laws, and regulations including, but not limited to RESPA, TILA, Fair Debt Collection Act, HOEP A and other laws;

2. That all appropriate disclosures of terms, costs, commissions, rebates, kickbacks, fees etc. were properly disclosed at the inception of the loan;

3. That any sale or transfer of the loan was conducted in accordance with proper laws and was a true sale of the note;

2

4. That the claimed holder in due course of the promissory note and/or deed of trust is holding such note in compliance with State and Federal laws and is entitled to the benefits of the payments;

5. That each servicer and/or sub-servicer of the mortgage has serviced the mortgage in accordance with the terms of the mortgage, promissory note and/or deed of trust;

6. That each servicer and sub-servicer of the mortgage has serviced the mortgage in compliance with local, state and federal statutes, laws and regulations;

7. That the mortgage loan has properly been credited, debited, adjusted, amortized and charged correctly;

8. That interest and principal have been properly calculated and applied to the loan;

9. That the principal balance has been properly calculated, amortized and accounted for; and

10. That no charges, fees or expenses, not obligated by the agreement, have been charged, assessed or collected from the account.

In order to validate the debt and audit the account, we need copies of pertinent documents to be provided. We also need answers, in writing, to various servicing questions. For each record kept on computer or in any other electronic file or format, please provide a paper copy of all information in each field or record in each computer system, program or database used by you that contains any information on the account number, the borrower name, or the subject property. As such, please send this data to the address above as soon as possible.

Please provide copies of the following to this law office:

1. All data, information, notations, text, figures and information contained in the mortgage servicing and accounting computer systems including, but not limited to Alltel or Fidelity CPI system, or any other similar mortgage servicing software used by you, any servicers, or sub-servicer of the mortgage account from the inception of the loan to the date written above.

2. All descriptions and legends of all Codes used in the mortgage servicing and accounting system so that the examiners, auditors and experts retained to audit and review the mortgage account may properly conduct their work.

3. All assignments, transfers, allonges, or other documents evidencing a transfer, sale or assignment of the mortgage, deed of trust, promissory note or other document that secures payment of the obligation in this account from the inception of the loan to the present date including any such assignments on Mortgage Electronic Registration System (MERS).

4. All records, electronic or otherwise, of assignments of the mortgage, promissory note or servicing rights to the mortgage including any such assignments on MERS.

5. All deeds in lieu, modifications to the mortgage, promissory note or deeds of trust executed from the inception of the loan to the present date.

6. The front and back of each and every canceled check, money order, draft, debit or credit notice issued to any servicer of the account for payment of any monthly payment, other payment, escrow charge, fee or expense on the account.

7. All escrow analyses conducted on the account from the inception of the loan until the date of this letter;

8. The front and back of each and every canceled check, draft or debit notice issued for payment of closing costs, fees and expenses listed on the disclosure statement including, but not limited to,

appraisal fees, inspection fees, title searches, title insurance fees, credit life insurance premiums, hazard insurance premiums, commissions, attorney's fees, points, etc.

9.  Front and back copies of all payment receipts, checks, money orders, drafts, automatic debits and written evidence of payments made by others or me on the account.

10. All letters, statements and documents sent to the borrower by your company;

11. All, letters, statements and documents sent to the borrower by agents, attorneys or representatives of your company;

12. All letters, statements and documents sent to the borrower by previous servicers, sub-servicers or others in your loan file or in your control or possession or in the control or possession of any affiliate, parent company, agent, sub-servicer, servicer, attorney or other representative of your company.

13. All letters, statements and documents contained in the loan file or imaged by you, any servicer or subservicers of the mortgage from the inception of the loan to present date.

14. All electronic transfers, assignments, sales of the note, mortgage, deed of trust or other security instrument.

15. All copies of property inspection reports, appraisals, BPOs and reports done on the property.

16. All invoices for each charge, including but not limited to, inspection fees, BPOs, appraisal fees, attorney's fees, insurance, taxes, assessments or any expense, which has been charged to the mortgage account from the inception of the loan to the present date.

17. Copies of the front and back of all checks used to pay invoices for each charge, including but not limited to, inspection fees, BPOs, appraisal fees, attorney's fees, insurance, taxes, assessments or any expense which has been charged to the mortgage account from the inception of the loan to the present date.

18. All agreements, contracts and understandings with vendors that have been paid for any charge on the account from the inception of the loan to the present date.

19. All loan servicing records, payment payoffs, payoff calculations, Adjustable Rate Mortgage audits, interest rate adjustments, payment records, transaction histories, loan histories, accounting records, ledgers, and documents that relate to the accounting of the loan from the inception of the loan until present date.

20. All loan servicing transaction records, ledgers, registers and similar items detailing how the loan has been serviced from the inception of the loan until present date.

Further, in order to conduct the audit and review of the account, and to determine all proper amounts due, please answer the following questions concerning the servicing and accounting of the mortgage account from its inception to the present date:

## LOAN ACCOUNTING & SERVICING SYSTEMS

1.  Please identify each loan accounting and servicing system used by you and any sub-servicer or previous servicer from the inception of the loan to the present date..

2.  For each loan accounting and servicing system identified by you and any sub-servicer or previous servicer from the inception of the loan to the present date, please provide the name and address of the company or party that designed, sold, programmed and maintained the system.

3.  For each loan accounting and servicing system used by you and any sub-servicer or previous servicer from the inception of the loan to the present date, please provide the complete transaction code list for each system so that the experts can adequately audit the account.

4

## DEBITS & CREDITS

1. In a spreadsheet form or in letter form in a columnar format, please detail each and every credit on the account and the date such credit was posted to the account, as well as the date any credit was received.

2. In a spreadsheet form or in letter form in a columnar format, please detail each and every debit on the account and the date such debit was posted to the account.

3. For each debit or credit listed, please provide the definition for each and every corresponding transaction code utilized, and the master transaction code list used by you, any sub-servicers and previous servicers on this account.

## MORTGAGE SALES, TRANSFERS & ASSIGNMENTS

1. Has each sale, transfer or assignment of the mortgage, promissory note, deed of trust or any other instrument executed by the borrower to secure the debt, from the inception of the loan to the present date, been recorded in the county property records in the county and state in which the property is located? Yes or No?

2. If the answer to the immediately preceding question is no, why not? If the answer is yes, what documentation evidences said recordation?

3. Is your company the servicer of the mortgage loan or the holder in due course and beneficial owner of the mortgage, promissory note and/or deed of trust?

4. Have any sales, transfers or assignments of the mortgage, promissory note, deed of trust or any other instrument executed to secure the debt, from the inception of the loan to the present date, been recorded in any electronic fashion such as MERS or other internal or external recording system? Yes or No?

5. If the answer to the immediately preceding question is yes, please detail the names of each seller, purchaser, assignor, assignee or any other holder in due course to any right or obligation of any note, mortgage, deed or security instrument executed securing the obligation on the account that was not recorded in the county records where the property is located, whether they be mortgage servicing rights or the beneficial interest in the principal and interest payments.

## ATTORNEY'S FEES

For purposes of the questions below dealing with attorney's fees, please consider the terms attorney's fees and legal fees to be interchangeable and equivalent.

1. Have attorney's fees ever been assessed on or charged to the account, at any time from the inception of the loan to the present date?

2. If the answer to the immediately preceding question is yes, please detail each separate assessment and charge of attorney's fees to the account, including for which corresponding payment period or month such fee was assessed, from the inception of the loan to the present date and the date of such assessment to the account.

3. Have attorney's fees ever been collected on the account, at any time from the inception of the loan to the present date?

4. If the answer to the immediately preceding question is yes, please detail each separate collection of attorney's fees on the account, including for which corresponding payment period or month such fee was collected, from the inception of the loan to the present date and the date of such collection from the account.

5. Please provide the name and address of each attorney or law firm that has been paid any fees or expenses related to the account from the inception of the loan to the present date.

6. Please identify, in writing, the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement signed by the borrower, which authorized the assessment, charge or collection of attorney's fees.

7. Please detail and list, in writing, any adjustments in attorney's fees assessed, charged or collected and on what date such adjustment was made and the reasons for such adjustment.

8. Has interest been calculated on any attorney's fees and charged or assessed to the account? Yes or No?

9. Identify the provision, paragraph, section or sentence of any note, mortgage, deed of trust, or other agreement signed by the borrower authorizing interest to be calculated on attorney's fees and charged or assessed to the account.

10. How much in total attorney's fees have been assessed or charged to the account from the inception of the loan until present date? $ _____

11. How much in total attorney's fees have been collected on the account from the inception of the loan until present date? $ _____

12. Please send copies of all invoices and detailed billing statements from any law firm or attorney that has billed such fees that have been assessed, charged or collected from the account.

## SUSPENSE / UNAPPLIED ACCOUNTS

For purposes of this section please treat the term suspense account and unapplied account as interchangeable and equivalent.

1. Have there been any suspense or unapplied account transactions on the account from the inception of the loan until present date?

2. If the answer to the above question is yes, please explain the reason for each and every suspense transaction that occurred on the account. If the answer to the above question is no, please skip to the section on Late Fees.

3. In a spreadsheet or in letter form in a columnar format, please detail each and every suspense or unapplied transaction, both debits and credits that were related to the account from the inception of the loan until present date.

## LATE FEES

For purposes of the questions below dealing with late fees, please consider the terms late fees and late charges to be interchangeable and equivalent.

1. Have any late fees been assessed, charged or collected on the account? If the answer to this question is no, skip to the section on Property Inspections.

2. Have you, any sub-servicer or any prior servicer reported the collection of late fees on the account as interest in any statement to the borrower or to the IRS? Yes or No?

3. Do you, any sub-servicer, or any previous servicer consider the payment of late fees as liquidated damages for not receiving the payment on time? Yes or No?

4. Are late fees considered interest?

5. Please detail in writing what expenses and damages are or were incurred for any payment made that was considered late.

6. Were any of these expenses or damages charged or assessed to the account in any other way? Yes or No?

6

7.  If the answer to number 6 is yes, please describe what expenses or charges were charged or assessed to the account.

8.  Please describe in writing what expenses you or others undertook due to any payment made which was considered late

9.  Please describe in writing what damages you or others undertook due to any payment made which was considered late.

10. Please identify in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement signed by the borrower, which authorized the assessment or collection of late fees.

11. Please detail and list in writing each separate late fee assessed or charged to the account and for which corresponding payment period or month such late fee was assessed from the inception of the loan to present date.

12. Please detail and list in writing each separate late fee collected from the account and for which corresponding payment period or month such late fee was collected from the inception of the loan to present date.

13. Please detail and list in writing any adjustments in late fees assessed, charged or collected, on what date such adjustment was made and the reasons for such adjustment.

14. Has interest been charged on any late fee assessed or charged to the account? Yes or No?

15. Is interest allowed to be assessed or charged on late fees charged or assessed to the account? Yes or No?

16. Please provide the exact months or payment dates you, any sub-servicers or previous servicers of the account claim any payments were late from the inception of the loan to the present date.

17. How much in total late charges have been assessed or charged to the account from the inception of the loan until present date? $ _____

18. How much in total late charges have been collected on the account from the inception of the loan until present date? $ _____

## PROPERTY INSPECTIONS

For purposes of this section, property inspection and inspection fee refer to any inspection of the property by any source and any related fee or expense charged, assessed or collected for such inspection.

1.  Have any property inspections been conducted on the property at any time from the inception of the loan until the present date? If the answer is no, please skip to the section on Broker Price Option Fees.

2.  Please provide a list of each property inspection conducted on the property that is the security interest for the mortgage, deed or note. On that list include the date of any inspections, the price charged for each inspection, the company name, address and inspector or individual conducting the inspection, and the reason for each inspection.

3.  State how property inspections are beneficial to the borrower.

4.  Explain how property inspections are protective of the property.

5.  Please explain your policy on property inspections.

6.  Do you consider the payment of inspection fees as a cost of collection? Yes or No? If yes, why?

7.  Do you use property inspections to collect debts? Yes or No?

7

8. Have you used any portion of the property inspection process on the property to collect a debt or inform the borrower of a debt, payment or obligation? If yes, please answer when and why?

9. Please identify, in writing, the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement signed by the borrower that authorized the assessment or collection of property inspection fees.

10. Have you labeled in any record or document sent to the borrower a property inspection as a miscellaneous advance? Yes or No? If yes, why?

11. Have you labeled in any record or document sent to the borrower a property inspection as a legal fee or attorney's fee? Yes or No? If yes, why?

12. Please detail and list, in writing, each separate inspection fee assessed to the account and for which corresponding payment period or month such fee was assessed or charged from the inception of the loan to present date.

13. Please detail and list, in writing, each separate inspection fee collected from the account and for which corresponding payment period or month such fee was collected from the inception of the loan to present date.

14. Please detail and list, in writing, any adjustments in inspection fees assessed, charged or collected, on what date such adjustment was made and the reasons for such adjustment.

15. Has interest been charged on any inspection fees assessed or charged to the account? Yes or No? If yes, when and how much was charged?

16. Is interest allowed to be assessed or charged on inspection fees charged or assessed to the account? Yes or No?

17. How much in total inspection fees have been assessed to the account from the inception of the loan until present date? $ _____

18. How much in total inspection fees have been collected on the account from the inception of the loan until present date? $ _____

19. Please forward copies of all property inspections made on the property in the mortgage loan file.

20. Has any fee charged or assessed for property inspections been placed into the escrow account? Yes or no?

## BROKER PRICE OPINION FEES

1. Have any Broker Price Opinions (BPOs) been conducted on the property?

2. If the answer to question 1 is yes, provide a list showing the date of each BPO conducted on the property that is the security interest for the mortgage, deed or note, the price of each BPO conducted, the name and address of each individual or entity that conducted the BPO, and the reason for each BPO conducted on the subject property.

3. Explain how BPOs are beneficial to the borrower.

4. Explain how BPOs are protective of the property.

5. Provide a detailed explanation of your policy on BPOs.

6. Have any BPO fees been assessed or charged to the account? Yes or No?

7. If the answer to number 6 is yes, how much in total BPO fees have been assessed or charged to the account? $ _____

8. Specifically identify what clause, paragraph and sentence in the note, mortgage or deed of trust or any agreement executed by the borrower allows you to assess, charge or collect a BPO fee on this loan.

9. Please send copies of all BPO reports that have been done on the property at any time from the inception of the loan to the present date.

10. Has any fee charged or assessed for a BPO been placed into the escrow account? Yes or no?

## FORCE-PLACED INSURANCE

1. Have you placed or ordered any force-placed insurance policies on the property?

2. If yes, provide a listing of every instance where force-placed insurance was obtained on the property, listing the date of each policy ordered or placed on the property that is the security interest for the mortgage, deed or note, the price of each such policy, the agent for each policy, the underwriter for each policy, the coverage amount, deductible, the owner of the policy, the date when any such policy was cancelled, revoked or rescinded, and the reason each policy was placed on the property.

3. Explain how the force-placed insurance policies are beneficial to the borrower.

4. Explain how the force-placed insurance policies are protective of the property.

5. Provide a detailed explanation of your policy on force-placed insurance.

6. Have any force-placed insurance fees been assessed or charged to the mortgage or escrow account? Yes or No?

7. If yes, how much in total force-placed policy fees have been assessed or charged to the account? $_____

8. Specifically identify what clause, paragraph and sentence in the note, mortgage or deed of trust or any agreement executed by the borrower allows you to assess, charge or collect force-placed insurance fees from the borrower.

9. Do you have any relationship with the agent, agency or underwriter that placed any policies on the property? If yes, please describe the relationship in full.

10. Do you have any relationship with the carrier that issued any policies on the property? If yes, please describe the relationship in full.

11. Has the agency or carrier you used to place a force-placed insurance policy on the property provided you any service, computer system, discount on policies, commissions, rebates or any form of consideration? If yes, please describe the services, discounts or other item provided.

12. Do you maintain a blanket insurance policy to protect security interest properties in the event that customer policies have expired?

13. Please send copies of all force-placed insurance policies that have been ordered or placed on the property at any time from the inception of this loan to the present time.

## SERVICING PROCESSES

For each of the following questions, please provide a detailed written explanation that answers each question as it relates to the servicing of this mortgage account from its inception to the present date.

1. Did the originator or any previous servicer of the loan have any financing agreements or contracts with your company or an affiliate of your company?

2. Did the originator of the loan or any previous servicer of the loan have a warehouse loan agreement or contract with your company?

*9*

3. Did the originator of the loan or any previous servicer of the loan receive any compensation, fee, commission, payment, rebate or other financial consideration from your company or any affiliate of your company for handling, processing, originating or administering the loan? If yes, please describe and itemize each and every form of compensation, fee, commission, payment, rebate or other financial consideration paid to the originator or a previous servicer of the loan by your company or any affiliate.

4. Please identify where the originals of the entire loan file are currently located and how they are being stored, kept and protected.

5. If the original promissory note or mortgage signed by the borrower is not in the file location noted in the answer to number 4 preceding, where is the original promissory note or mortgage located? Please describe its physical location and anyone holding this note as a custodian or trustee, if applicable.

6. If the original deed of trust or mortgage and note signed by the borrower are not in the file location noted in the answer to number 4 preceding, where are the original deed of trust or mortgage and note located? Please describe its physical location and anyone holding this note as a custodian or trustee, if applicable.

7. Since the inception of the loan, has there been any assignment of the promissory note or mortgage to any other party? If the answer is yes, please identify the names and addresses of each and every individual, party, bank, trust or entity that has received such assignment, and the date of such assignment.

8. Since the inception of the loan, has there been any assignment of the deed of trust or mortgage and note to any other party? If the answer is yes, please identify the names and addresses of each and every individual, party, bank, trust or entity that has received such assignment, and the date of such assignment.

9. Since the inception of the loan, has there been any sale or assignment of servicing rights to the mortgage loan to any other party? If the answer is yes, please identify the names and addresses of each and every individual, party, bank, trust or entity that has received such assignment or sale, and the date of such sale or assignment.

10. Since the inception of the loan, has any sub-servicer serviced any portion of the mortgage loan? If the answer is yes, please identify the names and addresses of each and every individual, party, bank, trust or entity that has acted as a sub-servicer for the mortgage loan, and the dates during which they serviced the loan.

11. Has the mortgage loan been made a part of any mortgage pool since the inception of the loan? If yes, please identify each and every loan mortgage pool of which the mortgage has been a part from the inception of the loan to the present date.

12. Has each and every assignment of the mortgage or promissory note been recorded in the county land records where the property associated with the mortgage loan is located?

13. Has there been any electronic assignment of the mortgage with MERS or any other computer mortgage registry service or computer program? If yes, please identify the name and address of each and every individual, entity, party, bank, trust or organization or servicer that has been assigned the mortgage servicing rights to the loan as well as the beneficial interest to the payments of principal and interest on the loan, and the dates of such assignments.

14. Have there been any investors, as defined in the mortgage industry, who have participated in any mortgage-backed security, collateral mortgage obligation or other mortgage security instrument that the mortgage loan has ever been a part of from the inception of the mortgage to the present date? If yes, please identify the name and address of each and every individual, entity, organization and/or trust participating as an investor.

/b

15. Please identify the parties, by name and address, to all sales contracts, servicing agreements, assignments, alonges, transfers, indemnification agreements, recourse agreements and any agreement related to the loan from its inception to the current date written above?

16. Please provide copies of all sales contracts, servicing agreements, assignments, alonges, transfers, indemnification agreements, recourse agreements and any agreement related to the loan from its inception to the current date written above.

17. How much was paid for the individual mortgage loan in the most recent acquisition of the subject loan?

18. If the subject loan was part of a mortgage pool, what was the principal balance used to determine payment for the individual mortgage loan?

19. If the subject loan was part of a mortgage pool, what was the percentage of the principal balance above used to determine purchase of the individual mortgage loan?

20. To whom was a check or payment issued or made for the purchase of the mortgage loan?

21. Please provide copies of the front and back of the canceled check or documentation of the payment made.

22. Has the said property ever been foreclosed upon or have foreclosure proceedings ever been initiated?

23. If the answer to the immediately preceding question is yes, identify all individuals and investors who approved the foreclosure of the property.

Please provide the documents requested, along with detailed answers to each of the questions within the required lawful time frame. Return all documents and answers to:

> The Law Offices of Stamatakis + Thalji
> c/o Scott D., Stamatakis
> PO Box 341499
> Tampa, FL 33694

Should you have any questions or comments regarding this matter, you may reach me at the number listed above. Thanks and have a pleasant day.

Sincerely,

Scott D. Stamatakis
Attorney at Law

Enclosure- Power of Attorney

1 l

Scott D. Stamatakis, Esquire#
Sami Thalji, Esquire*+
Melissa Thalji, Esquire**
James J. Wimsatt, Esquire~
Robert H. Bonanno, Esquire^
Bruce R. Insana, Esquire^

**Consumer Justice Attorneys**

# STAMATAKIS + THALJI

www.MYINJURY.com

www.MYFORECLOSUREATTORNEY.com

# Managing Partner
* Former Prosecutor
+ Licensed General Contractor
** Certified Mediator
~ Licensed in FL | D.C. | MD
^ Of Counsel
MyInjury™
MyForeclosureAttorney™

---

**DATE:**     **APRIL 20, 2010**

**VIA:**     **VIA CERTIFIED MAIL RECEIPT #: 7009 3410 0001 7546 0184**

**TO:**     **BAC HOME LOANS SERVICING LP**
**PO BOX 5170. SIMI VALLEY, CA 93062**

**RE:**     **RESPA "QUALIFIED WRITTEN REQUEST," COMPLAINT, DISPUTE & VALIDATION OF DEBT LETTER & TILA REQUEST AS DEFINED BY THE REAL ESTATE SETTLEMENT PROCEDURES ACT, 12 U.S.C. § 2605(E). LOAN NO.: 149716450**
**BORROWER NAME(S): THOMAS RYAN, KAREN RYAN**
**PROPERTY ADDRESS: 301 GIBSON, UNIT 412, ROSEVILLE, CA 95678**

Dear BAC HOME LOANS SERVICING LP:

We write to question the accounting and servicing of the above referenced mortgage and to assist our mutual client in understanding and clarifying the various charges, credits, debits, transactions, reversals, actions, payments, records and analyses related to the servicing of their loan from its origination to the present date. Our client has executed a Limited Power of Attorney authorizing us to make these inquiries, act on their behalf, and receive all requested information, including any data deemed confidential or restricted. A copy of the Limited Power of Attorney has been included with this letter.

Our client is very concerned about the reported predatory lending and servicing schemes that mortgage companies and/or anyone who has held a beneficial interest in mortgage loans have been practicing; abuses that are targeting uninformed consumers, the uneducated and disadvantaged, the elderly and minority Americans. Our client is concerned that they may be a victim of such abuses.

As a borrower, our client is worried about (a) potential fraudulent and deceptive practices by unscrupulous mortgage brokers, (b) sales and transfers of mortgage servicing rights, (c) deceptive and fraudulent servicing practices to enhance balance sheets, and (d) deceptive, abusive and fraudulent accounting practices, any one of which may have negatively affected their credit rating, mortgage account and/or the debt or payments that are their legal obligation.

Because of this and other reasons that leave our client to question if they may be a victim of predatory lending, we dispute the validity of the current debt you claim our client owes. By debt, we refer to the principal balance claimed owed, the calculated monthly payment, calculated escrow payment and any fees claimed to be owed by you or any trust or entity you may represent.

To date, the documents and information that we possess and have received from you, and the conversations with your service representatives cannot answer our client's many questions. To independently validate the debt, we must conduct a complete examination, review, audit and accounting

of our client's mortgage loan from its inception through the present date.

We request, also, that you conduct your own investigation and audit of this account, since its inception, to validate the debt you currently claim is owed to you, accurately and to the penny. It is recommended that you do not merely rely on previous services or originators records, assurances or indemnity agreements.

Upon receipt of this letter, please refrain from reporting any negative credit information (if any) to any credit reporting agency based in any way on these requests.

Potential abuses by you or previous servicers could have deceptively, wrongfully, unlawfully and/or illegally resulted in one or all of the following:

1. Improperly increased the amounts of the monthly payments;

2. Incorrectly increased the principal balance owed;

3. Inaccurately increased the escrow payments;

4. Incorrectly increased the amounts applied and attributed toward interest on the account;

5. Erroneously decreased the amounts applied and attributed toward principal on the account; and/or,

6. Assessed, charged and/or collected fees, expenses and miscellaneous charges that are not legal obligations under the mortgage, note and/or deed of trust.

We want to ensure that our client has not been the victim of such predatory practices. Therefore, our client authorized a thorough review, examination, accounting and audit of their mortgage loan # 149716450 by mortgage auditing and predatory lending experts. This exam and audit will review the mortgage loan file from the date of their initial contact, application and the origination of the loan to the present date written above.

As such, please treat this letter as a Qualified Written Request under the Real Estate Settlement Procedures Act, codified as Title 12 § 2605 (e)(l)(B) (e) and Reg. X § 3500.21(f)2 of the United States Code as well as a request under Truth In Lending Act (TILA) 15 U.S.C. § 1601, et seq. RESPA provides substantial penalties and fines for non-compliance or failure to completely and accurately answer the questions provided in this letter within sixty (60) days of its receipt.

In order to conduct the examination and audit of this loan, please provide full and immediate disclosure including copies of all pertinent information and documentation regarding the loan. The documents requested and answers to these questions should ensure that the loan:

1. Was originated in lawful compliance with all federal and state laws, and regulations including, but not limited to RESPA, TILA, Fair Debt Collection Act, HOEP A and other laws;

2. That all appropriate disclosures of terms, costs, commissions, rebates, kickbacks, fees etc. were properly disclosed at the inception of the loan;

3. That any sale or transfer of the loan was conducted in accordance with proper laws and was a true sale of the note;

4. That the claimed holder in due course of the promissory note and/or deed of trust is holding such note in compliance with State and Federal laws and is entitled to the benefits of the payments;

5. That each servicer and/or sub-servicer of the mortgage has serviced the mortgage in accordance with the terms of the mortgage, promissory note and/or deed of trust;

6. That each servicer and sub-servicer of the mortgage has serviced the mortgage in compliance with local, state and federal statutes, laws and regulations;

7. That the mortgage loan has properly been credited, debited, adjusted, amortized and charged correctly;

8. That interest and principal have been properly calculated and applied to the loan;

9. That the principal balance has been properly calculated, amortized and accounted for; and

10. That no charges, fees or expenses, not obligated by the agreement, have been charged, assessed or collected from the account.

In order to validate the debt and audit the account, we need copies of pertinent documents to be provided. We also need answers, in writing, to various servicing questions. For each record kept on computer or in any other electronic file or format, please provide a paper copy of all information in each field or record in each computer system, program or database used by you that contains any information on the account number, the borrower name, or the subject property. As such, please send this data to the address above as soon as possible.

Please provide copies of the following to this law office:

1. All data, information, notations, text, figures and information contained in the mortgage servicing and accounting computer systems including, but not limited to Alltel or Fidelity CPI system, or any other similar mortgage servicing software used by you, any servicers, or sub-servicer of the mortgage account from the inception of the loan to the date written above.

2. All descriptions and legends of all Codes used in the mortgage servicing and accounting system so that the examiners, auditors and experts retained to audit and review the mortgage account may properly conduct their work.

3. All assignments, transfers, allonges, or other documents evidencing a transfer, sale or assignment of the mortgage, deed of trust, promissory note or other document that secures payment of the obligation in this account from the inception of the loan to the present date including any such assignments on Mortgage Electronic Registration System (MERS).

4. All records, electronic or otherwise, of assignments of the mortgage, promissory note or servicing rights to the mortgage including any such assignments on MERS.

5. All deeds in lieu, modifications to the mortgage, promissory note or deeds of trust executed from the inception of the loan to the present date.

6. The front and back of each and every canceled check, money order, draft, debit or credit notice issued to any servicer of the account for payment of any monthly payment, other payment, escrow charge, fee or expense on the account.

7. All escrow analyses conducted on the account from the inception of the loan until the date of this letter;

8. The front and back of each and every canceled check, draft or debit notice issued for payment of closing costs, fees and expenses listed on the disclosure statement including, but not limited to, appraisal fees, inspection fees, title searches, title insurance fees, credit life insurance premiums, hazard insurance premiums, commissions, attorney's fees, points, etc.

9. Front and back copies of all payment receipts, checks, money orders, drafts, automatic debits and written evidence of payments made by others or me on the account.

10. All letters, statements and documents sent to the borrower by your company;

11. All, letters, statements and documents sent to the borrower by agents, attorneys or representatives of your company;

12. All letters, statements and documents sent to the borrower by previous servicers, sub-servicers or others in your loan file or in your control or possession or in the control or possession of any affiliate, parent company, agent, sub-servicer, servicer, attorney or other representative of your company.

13. All letters, statements and documents contained in the loan file or imaged by you, any servicer or subservicers of the mortgage from the inception of the loan to present date.

14. All electronic transfers, assignments, sales of the note, mortgage, deed of trust or other security instrument.

15. All copies of property inspection reports, appraisals, BPOs and reports done on the property.

16. All invoices for each charge, including but not limited to, inspection fees, BPOs, appraisal fees, attorney's fees, insurance, taxes, assessments or any expense, which has been charged to the mortgage account from the inception of the loan to the present date.

17. Copies of the front and back of all checks used to pay invoices for each charge, including but not limited to, inspection fees, BPOs, appraisal fees, attorney's fees, insurance, taxes, assessments or any expense which has been charged to the mortgage account from the inception of the loan to the present date.

18. All agreements, contracts and understandings with vendors that have been paid for any charge on the account from the inception of the loan to the present date.

19. All loan servicing records, payment payoffs, payoff calculations, Adjustable Rate Mortgage audits, interest rate adjustments, payment records, transaction histories, loan histories, accounting records, ledgers, and documents that relate to the accounting of the loan from the inception of the loan until present date.

20. All loan servicing transaction records, ledgers, registers and similar items detailing how the loan has been serviced from the inception of the loan until present date.

Further, in order to conduct the audit and review of the account, and to determine all proper amounts due, please answer the following questions concerning the servicing and accounting of the mortgage account from its inception to the present date:

## LOAN ACCOUNTING & SERVICING SYSTEMS

1. Please identify each loan accounting and servicing system used by you and any sub-servicer or previous servicer from the inception of the loan to the present date..

2. For each loan accounting and servicing system identified by you and any sub-servicer or previous servicer from the inception of the loan to the present date, please provide the name and address of the company or party that designed, sold, programmed and maintained the system.

3. For each loan accounting and servicing system used by you and any sub-servicer or previous servicer from the inception of the loan to the present date, please provide the complete transaction code list for each system so that the experts can adequately audit the account.

## DEBITS & CREDITS

1. In a spreadsheet form or in letter form in a columnar format, please detail each and every credit on the account and the date such credit was posted to the account, as well as the date any credit was received.

4

Exhibit B

2. In a spreadsheet form or in letter form in a columnar format, please detail each and every debit on the account and the date such debit was posted to the account.

3. For each debit or credit listed, please provide the definition for each and every corresponding transaction code utilized, and the master transaction code list used by you, any sub-servicers and previous servicers on this account.

## MORTGAGE SALES, TRANSFERS & ASSIGNMENTS

1. Has each sale, transfer or assignment of the mortgage, promissory note, deed of trust or any other instrument executed by the borrower to secure the debt, from the inception of the loan to the present date, been recorded in the county property records in the county and state in which the property is located? Yes or No?

2. If the answer to the immediately preceding question is no, why not? If the answer is yes, what documentation evidences said recordation?

3. Is your company the servicer of the mortgage loan or the holder in due course and beneficial owner of the mortgage, promissory note and/or deed of trust?

4. Have any sales, transfers or assignments of the mortgage, promissory note, deed of trust or any other instrument executed to secure the debt, from the inception of the loan to the present date, been recorded in any electronic fashion such as MERS or other internal or external recording system? Yes or No?

5. If the answer to the immediately preceding question is yes, please detail the names of each seller, purchaser, assignor, assignee or any other holder in due course to any right or obligation of any note, mortgage, deed or security instrument executed securing the obligation on the account that was not recorded in the county records where the property is located, whether they be mortgage servicing rights or the beneficial interest in the principal and interest payments.

## ATTORNEY'S FEES

For purposes of the questions below dealing with attorney's fees, please consider the terms attorney's fees and legal fees to be interchangeable and equivalent.

1. Have attorney's fees ever been assessed on or charged to the account, at any time from the inception of the loan to the present date?

2. If the answer to the immediately preceding question is yes, please detail each separate assessment and charge of attorney's fees to the account, including for which corresponding payment period or month such fee was assessed, from the inception of the loan to the present date and the date of such assessment to the account.

3. Have attorney's fees ever been collected on the account, at any time from the inception of the loan to the present date?

4. If the answer to the immediately preceding question is yes, please detail each separate collection of attorney's fees on the account, including for which corresponding payment period or month such fee was collected, from the inception of the loan to the present date and the date of such collection from the account.

5. Please provide the name and address of each attorney or law firm that has been paid any fees or expenses related to the account from the inception of the loan to the present date.

6. Please identify, in writing, the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement signed by the borrower, which authorized the assessment, charge or collection of attorney's fees.

# Exhibit B

7. Please detail and list, in writing, any adjustments in attorney's fees assessed, charged or collected and on what date such adjustment was made and the reasons for such adjustment.

8. Has interest been calculated on any attorney's fees and charged or assessed to the account? Yes or No?

9. Identify the provision, paragraph, section or sentence of any note, mortgage, deed of trust, or other agreement signed by the borrower authorizing interest to be calculated on attorney's fees and charged or assessed to the account.

10. How much in total attorney's fees have been assessed or charged to the account from the inception of the loan until present date? $ _____

11. How much in total attorney's fees have been collected on the account from the inception of the loan until present date? $ _____

12. Please send copies of all invoices and detailed billing statements from any law firm or attorney that has billed such fees that have been assessed, charged or collected from the account.

## SUSPENSE / UNAPPLIED ACCOUNTS

For purposes of this section please treat the term suspense account and unapplied account as interchangeable and equivalent.

1. Have there been any suspense or unapplied account transactions on the account from the inception of the loan until present date?

2. If the answer to the above question is yes, please explain the reason for each and every suspense transaction that occurred on the account. If the answer to the above question is no, please skip to the section on Late Fees.

3. In a spreadsheet or in letter form in a columnar format, please detail each and every suspense or unapplied transaction, both debits and credits that were related to the account from the inception of the loan until present date.

## LATE FEES

For purposes of the questions below dealing with late fees, please consider the terms late fees and late charges to be interchangeable and equivalent.

1. Have any late fees been assessed, charged or collected on the account? If the answer to this question is no, skip to the section on Property Inspections.

2. Have you, any sub-servicer or any prior servicer reported the collection of late fees on the account as interest in any statement to the borrower or to the IRS? Yes or No?

3. Do you, any sub-servicer, or any previous servicer consider the payment of late fees as liquidated damages for not receiving the payment on time? Yes or No?

4. Are late fees considered interest?

5. Please detail in writing what expenses and damages are or were incurred for any payment made that was considered late.

6. Were any of these expenses or damages charged or assessed to the account in any other way? Yes or No?

7. If the answer to number 6 is yes, please describe what expenses or charges were charged or assessed to the account.

8. Please describe in writing what expenses you or others undertook due to any payment made which was considered late

6

Exhibit B

9. Please describe in writing what damages you or others undertook due to any payment made which was considered late.

10. Please identify in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement signed by the borrower, which authorized the assessment or collection of late fees.

11. Please detail and list in writing each separate late fee assessed or charged to the account and for which corresponding payment period or month such late fee was assessed from the inception of the loan to present date.

12. Please detail and list in writing each separate late fee collected from the account and for which corresponding payment period or month such late fee was collected from the inception of the loan to present date.

13. Please detail and list in writing any adjustments in late fees assessed, charged or collected, on what date such adjustment was made and the reasons for such adjustment.

14. Has interest been charged on any late fee assessed or charged to the account? Yes or No?

15. Is interest allowed to be assessed or charged on late fees charged or assessed to the account? Yes or No?

16. Please provide the exact months or payment dates you, any sub-servicers or previous servicers of the account claim any payments were late from the inception of the loan to the present date.

17. How much in total late charges have been assessed or charged to the account from the inception of the loan until present date? $ _____

18. How much in total late charges have been collected on the account from the inception of the loan until present date? $ _____

## PROPERTY INSPECTIONS

For purposes of this section, property inspection and inspection fee refer to any inspection of the property by any source and any related fee or expense charged, assessed or collected for such inspection.

1. Have any property inspections been conducted on the property at any time from the inception of the loan until the present date? If the answer is no, please skip to the section on Broker Price Option Fees.

2. Please provide a list of each property inspection conducted on the property that is the security interest for the mortgage, deed or note. On that list include the date of any inspections, the price charged for each inspection, the company name, address and inspector or individual conducting the inspection, and the reason for each inspection.

3. State how property inspections are beneficial to the borrower.

4. Explain how property inspections are protective of the property.

5. Please explain your policy on property inspections.

6. Do you consider the payment of inspection fees as a cost of collection? Yes or No? If yes, why?

7. Do you use property inspections to collect debts? Yes or No?

8. Have you used any portion of the property inspection process on the property to collect a debt or inform the borrower of a debt, payment or obligation? If yes, please answer when and why?

9. Please identify, in writing, the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement signed by the borrower that authorized the assessment or collection of property inspection fees.

7

10. Have you labeled in any record or document sent to the borrower a property inspection as a miscellaneous advance? Yes or No? If yes, why?

11. Have you labeled in any record or document sent to the borrower a property inspection as a legal fee or attorney's fee? Yes or No? If yes, why?

12. Please detail and list, in writing, each separate inspection fee assessed to the account and for which corresponding payment period or month such fee was assessed or charged from the inception of the loan to present date.

13. Please detail and list, in writing, each separate inspection fee collected from the account and for which corresponding payment period or month such fee was collected from the inception of the loan to present date.

14. Please detail and list, in writing, any adjustments in inspection fees assessed, charged or collected, on what date such adjustment was made and the reasons for such adjustment.

15. Has interest been charged on any inspection fees assessed or charged to the account? Yes or No? If yes, when and how much was charged?

16. Is interest allowed to be assessed or charged on inspection fees charged or assessed to the account? Yes or No?

17. How much in total inspection fees have been assessed to the account from the inception of the loan until present date? $ _____

18. How much in total inspection fees have been collected on the account from the inception of the loan until present date? $ _____

19. Please forward copies of all property inspections made on the property in the mortgage loan file.

20. Has any fee charged or assessed for property inspections been placed into the escrow account? Yes or no?

**BROKER PRICE OPINION FEES**

1. Have any Broker Price Opinions (BPOs) been conducted on the property?

2. If the answer to question 1 is yes, provide a list showing the date of each BPO conducted on the property that is the security interest for the mortgage, deed or note, the price of each BPO conducted, the name and address of each individual or entity that conducted the BPO, and the reason for each BPO conducted on the subject property.

3. Explain how BPOs are beneficial to the borrower.

4. Explain how BPOs are protective of the property.

5. Provide a detailed explanation of your policy on BPOs.

6. Have any BPO fees been assessed or charged to the account? Yes or No?

7. If the answer to number 6 is yes, how much in total BPO fees have been assessed or charged to the account? $ _____

8. Specifically identify what clause, paragraph and sentence in the note, mortgage or deed of trust or any agreement executed by the borrower allows you to assess, charge or collect a BPO fee on this loan.

9. Please send copies of all BPO reports that have been done on the property at any time from the inception of the loan to the present date.

10. Has any fee charged or assessed for a BPO been placed into the escrow account? Yes or no?

**FORCE-PLACED INSURANCE**

8

1. Have you placed or ordered any force-placed insurance policies on the property?

2. If yes, provide a listing of every instance where force-placed insurance was obtained on the property, listing the date of each policy ordered or placed on the property that is the security interest for the mortgage, deed or note, the price of each such policy, the agent for each policy, the underwriter for each policy, the coverage amount, deductible, the owner of the policy, the date when any such policy was cancelled, revoked or rescinded, and the reason each policy was placed on the property.

3. Explain how the force-placed insurance policies are beneficial to the borrower.

4. Explain how the force-placed insurance policies are protective of the property.

5. Provide a detailed explanation of your policy on force-placed insurance.

6. Have any force-placed insurance fees been assessed or charged to the mortgage or escrow account? Yes or No?

7. If yes, how much in total force-placed policy fees have been assessed or charged to the account? $_____

8. Specifically identify what clause, paragraph and sentence in the note, mortgage or deed of trust or any agreement executed by the borrower allows you to assess, charge or collect force-placed insurance fees from the borrower.

9. Do you have any relationship with the agent, agency or underwriter that placed any policies on the property? If yes, please describe the relationship in full.

10. Do you have any relationship with the carrier that issued any policies on the property? If yes, please describe the relationship in full.

11. Has the agency or carrier you used to place a force-placed insurance policy on the property provided you any service, computer system, discount on policies, commissions, rebates or any form of consideration? If yes, please describe the services, discounts or other item provided.

12. Do you maintain a blanket insurance policy to protect security interest properties in the event that customer policies have expired?

13. Please send copies of all force-placed insurance policies that have been ordered or placed on the property at any time from the inception of this loan to the present time.

## SERVICING PROCESSES

For each of the following questions, please provide a detailed written explanation that answers each question as it relates to the servicing of this mortgage account from its inception to the present date.

1. Did the originator or any previous servicer of the loan have any financing agreements or contracts with your company or an affiliate of your company?

2. Did the originator of the loan or any previous servicer of the loan have a warehouse loan agreement or contract with your company?

3. Did the originator of the loan or any previous servicer of the loan receive any compensation, fee, commission, payment, rebate or other financial consideration from your company or any affiliate of your company for handling, processing, originating or administering the loan? If yes, please describe and itemize each and every form of compensation, fee, commission, payment, rebate or other financial consideration paid to the originator or a previous servicer of the loan by your company or any affiliate.

4. Please identify where the originals of the entire loan file are currently located and how they are being stored, kept and protected.

Exhibit B

5. If the original promissory note or mortgage signed by the borrower is not in the file location noted in the answer to number 4 preceding, where is the original promissory note or mortgage located? Please describe its physical location and anyone holding this note as a custodian or trustee, if applicable.

6. If the original deed of trust or mortgage and note signed by the borrower are not in the file location noted in the answer to number 4 preceding, where are the original deed of trust or mortgage and note located? Please describe its physical location and anyone holding this note as a custodian or trustee, if applicable.

7. Since the inception of the loan, has there been any assignment of the promissory note or mortgage to any other party? If the answer is yes, please identify the names and addresses of each and every individual, party, bank, trust or entity that has received such assignment, and the date of such assignment.

8. Since the inception of the loan, has there been any assignment of the deed of trust or mortgage and note to any other party? If the answer is yes, please identify the names and addresses of each and every individual, party, bank, trust or entity that has received such assignment, and the date of such assignment.

9. Since the inception of the loan, has there been any sale or assignment of servicing rights to the mortgage loan to any other party? If the answer is yes, please identify the names and addresses of each and every individual, party, bank, trust or entity that has received such assignment or sale, and the date of such sale or assignment.

10. Since the inception of the loan, has any sub-servicer serviced any portion of the mortgage loan? If the answer is yes, please identify the names and addresses of each and every individual, party, bank, trust or entity that has acted as a sub-servicer for the mortgage loan, and the dates during which they serviced the loan.

11. Has the mortgage loan been made a part of any mortgage pool since the inception of the loan? If yes, please identify each and every loan mortgage pool of which the mortgage has been a part from the inception of the loan to the present date.

12. Has each and every assignment of the mortgage or promissory note been recorded in the county land records where the property associated with the mortgage loan is located?

13. Has there been any electronic assignment of the mortgage with MERS or any other computer mortgage registry service or computer program? If yes, please identify the name and address of each and every individual, entity, party, bank, trust or organization or servicer that has been assigned the mortgage servicing rights to the loan as well as the beneficial interest to the payments of principal and interest on the loan, and the dates of such assignments.

14. Have there been any investors, as defined in the mortgage industry, who have participated in any mortgage-backed security, collateral mortgage obligation or other mortgage security instrument that the mortgage loan has ever been a part of from the inception of the mortgage to the present date? If yes, please identify the name and address of each and every individual, entity, organization and/or trust participating as an investor.

15. Please identify the parties, by name and address, to all sales contracts, servicing agreements, assignments, alonges, transfers, indemnification agreements, recourse agreements and any agreement related to the loan from its inception to the current date written above?

16. Please provide copies of all sales contracts, servicing agreements, assignments, alonges, transfers, indemnification agreements, recourse agreements and any agreement related to the loan from its inception to the current date written above.

17. How much was paid for the individual mortgage loan in the most recent acquisition of the subject loan?

*Exhibit B*

18. If the subject loan was part of a mortgage pool, what was the principal balance used to determine payment for the individual mortgage loan?

19. If the subject loan was part of a mortgage pool, what was the percentage of the principal balance above used to determine purchase of the individual mortgage loan?

20. To whom was a check or payment issued or made for the purchase of the mortgage loan?

21. Please provide copies of the front and back of the canceled check or documentation of the payment made.

22. Has the said property ever been foreclosed upon or have foreclosure proceedings ever been initiated?

23. If the answer to the immediately preceding question is yes, identify all individuals and investors who approved the foreclosure of the property.

Please provide the documents requested, along with detailed answers to each of the questions within the required lawful time frame. Return all documents and answers to:

> The Law Offices of Stamatakis + Thalji
> c/o Scott D., Stamatakis
> PO Box 341499
> Tampa, FL 33694

Should you have any questions or comments regarding this matter, you may reach me at the number listed above. Thanks and have a pleasant day.

Sincerely,

Scott D. Stamatakis
Attorney at Law

Enclosure- Power of Attorney

Exhibit C     Copy   1p.

**Bank of America**

**Home Loans**

400 National Way
Mailstop CA6-919-02-22
Simi Valley, CA 93065

May 21, 2010

Stamatakis & Thalji
P.O. Box 341499
Tampa, FL 341499
Attn: Scott D. Stamatakis

Re:     Borrower(s): Karen and Thomas Ryan
        Property Address(s): 301 Gibson Drive Unit 412, Roseville, CA 95678
        Loan Number: 148938028

Dear Mr. Stamatakis:

We are in receipt of your correspondence dated April 20, 2010, which was received on April 26, 2010, by BAC Home Loans Servicing, LP, a subsidiary of Bank of America, N.A. ("BAC Home Loans"), f/k/a Countrywide Home Loans Servicing LP.

As you indicated to treat your correspondence as a Qualified Written Request under RESPA section 6(e), we will comply in the time provided by the statute, which is as follows:
1. A loan servicer must provide a written response acknowledging receipt of a borrower's Qualified Written Request within 20 days (excluding Saturdays, Sundays and legal holidays) of receiving the Qualified Written Request.
2. Within 60 days (excluding legal holidays, Saturdays and Sundays) of receiving a Qualified Written Request, the servicer must resolve the complaint by correcting the account or giving a written statement of the reasons for its position.

If you have any questions, please contact:     Rachel Pang
                                                (805) 577-3176

Sincerely,

*Kirsten Volmer*

Kirsten Volmer
Litigation Specialist
Foreclosure, Bankruptcy and Risk Management (FBRM)
Qualified Written Request (QWR) Group

*BAC Home Loans is required by law to inform you that this communication is from a debt collector*

# Dilworth
## Paxson LLP

direct dial number:
(215) 575-7137

Jonathan K. Moore
jmoore@dilworthlaw.com

July 15, 2010

Stamatakis & Thalji
13904 North Dale Mabry Highway, Suite 301
Tampa, FL 33618
Attn: Scott D. Stamatakis

**SCANNED**

Re:    Borrower(s): Karen and Thomas Ryan (collectively, the "Borrower")
       Property Address(s): 301 Gibson Drive Unit 412, Roseville, CA 95678
       Loan Number: 148938028 (the "Loan")

Dear Mr. Stamatakis:

This firm represents BAC Home Loans Servicing, LP, a subsidiary of Bank of America, N.A. ("BAC Home Loans"), f/k/a Countrywide Home Loans Servicing LP, with regard to the Loan. We are writing in response to your April 20, 2010 correspondence (the "Letter"), which was sent to BAC Home Loans for response, wherein you request information regarding the Loan. Although couched as a "qualified written request," the information requested in the Letter goes well beyond that which is available through a qualified written request made under 12 U.S.C. §2605 ("QWR").

As you may be aware, a QWR is a written correspondence which includes a statement of specific reasons why the borrower believes that its account is in error and which provides sufficient detail to allow the servicer of the loan to review the borrower's account to determine whether there were errors made in connection with the account, and to either make appropriate corrections where errors were made or explain to the borrower why the servicer believes the account is accurate. A QWR is not a vehicle for a borrower to obtain confidential information concerning the lender's business practices, trade secrets or other proprietary information, nor can it be used to support a fishing expedition for documents that may support a claim or as a mechanism for seeking any other information which does not relate specifically to the borrower's loan. The Letter seeks information which goes well beyond that which is available through a QWR, while failing to provide any of the necessary detail regarding any specific error(s) made by the servicer in connection with the Loan.

Although the Letter is overly broad, unduly burdensome and not in conformity with 12 U.S.C. §2605, we reviewed BAC Home Loans' file documents in an attempt to obtain information responsive to those of your inquiries which were consistent with 12 U.S.C. §2605. We will address those of your inquiries which require a response in the same order as presented in the Letter as follows:

*1*

### 1.) Document Copies

Enclosed are copies of the following documents related to the Loan: Appraisal Report; Deed of Trust; Condominium Rider; 1-4 Family Rider; Adjustable Rate Rider; Truth in Lending Disclosure Statement(s); Uniform Residential Loan Application; Good Faith Estimate(s); Adjustable Rate Note; Prepayment Penalty Addendum; and HUD-1 Settlement Statement. Your requests for all other documents and copies of checks have been declined, as such requests are either overly broad, do not concern the application of payments or the disbursement of funds to the Borrower, or do not relate to any specific acts of wrongdoing that you have alleged.

### 2.) Loan Accounting and Servicing Systems

Enclosed is a Payment History that provides a detailed outline of transactions for the Loan during BAC Home Loans' servicing. Please note that this history provides pertinent information on payments received, tax and insurance payments disbursed, funds in the suspense/unapplied funds balance, and late charges assessed and paid. The Payment History is designed to be user-friendly and there are no codes or terms used in our Payment History that require specific definitions.

The fees that have been charged to the account that are not reflected in the Payment History are as follows: attorney/trustee fees of $325.00; BPO fees of $190.00; expedited payoff service fees of $60.00; inspection fees of $165.00; mailing fees of $22.08; recording fees of $45.00; and title fees of $625.00. The remainder of your requests are overly broad, do not concern the application of payments or the disbursement of funds, and make no allegations whatsoever of any wrongdoing by BAC Home Loans. Accordingly, these requests are declined as they seek documentation that goes beyond that which is available through a "qualified written request" under 12 U.S.C. §2605.

### 3.) Debits and Credits

See paragraph 2 above. The remainder of your requests are overly broad, do not concern the application of payments or the disbursement of funds, and make no allegations whatsoever of any wrongdoing by BAC Home Loans. Accordingly, these requests are declined as they seek documentation that goes beyond that which is available through a "qualified written request" under 12 U.S.C. §2605.

### 4.) Mortgage and Assignments

The current owner of the note is The Bank of New York Mellon f/k/a The Bank of New York, as Trustee for the Certificateholders of CHL Mortgage Pass-Through Trust 2007-HYB2 Mortgage Pass-Through Certificates 2007-HYB2, with an address of 101 Barclay St. – 4W, New York, NY 10286. BAC Home Loans is the servicer of the Loan. The remainder of your requests are overly broad, do not concern the application of payments or the disbursement of funds, and make no allegations whatsoever of any wrongdoing by BAC Home Loans. Accordingly, these requests are declined as they seek documentation that goes beyond that which is available through a "qualified written request" under 12 U.S.C. §2605.

### 5.) Attorney Fees

See paragraph 2 above. The remainder of your requests are overly broad, do not concern the application of payments or the disbursement of funds, and make no allegations whatsoever of

Dilworth Paxson LLP                                                                Page 3

any wrongdoing by BAC Home Loans. Accordingly, these requests are declined as they seek documentation that goes beyond that which is available through a "qualified written request" under 12 U.S.C. §2605.

**6.) Suspense/Unapplied Accounts**
See paragraph 2 above. The remainder of your requests are overly broad, do not concern the application of payments or the disbursement of funds, and make no allegations whatsoever of any wrongdoing by BAC Home Loans. Accordingly, these requests are declined as they seek documentation that goes beyond that which is available through a "qualified written request" under 12 U.S.C. §2605.

**7.) Late Fees**
Late charges are reported as interest paid effective with the 2008 tax year. Prior to the 2008 tax year, there was no interest paid or reported to the IRS relating to late charges assessed and paid to this account. See paragraph 2 above and the enclosed documents. The remainder of your requests are overly broad, do not concern the application of payments or the disbursement of funds, and make no allegations whatsoever of any wrongdoing by BAC Home Loans. Accordingly, these requests are declined as they seek documentation that goes beyond that which is available through a "qualified written request" under 12 U.S.C. §2605.

**8.) Property Inspections**
See paragraph 2 above for the fees due in connection with property inspections performed. Please refer to the enclosed documents for information regarding the circumstances whereby property inspections may be performed. The remainder of these requests are overly broad, do not concern the application of payments or the disbursement of funds, and make no allegations whatsoever of any wrongdoing by BAC Home Loans. Accordingly, these requests are declined as they seek documentation that goes beyond that which is available through a QWR under 12 U.S.C. §2605.

**9.) BPO Fees**
See paragraph 2 above for BPO fees, if any. The remainder of your requests are overly broad, do not concern the application of payments or the disbursement of funds, and make no allegations whatsoever of any wrongdoing by BAC Home Loans. Accordingly, these requests are declined as they seek documentation that goes beyond that which is available through a "qualified written request" under 12 U.S.C. §2605.

**10.) Forced Placed Insurance**
Per the terms and conditions of the aforementioned documents, forced-placed insurance, also known as lender secured insurance, can be secured by the lender if notification is received via property inspections that indicates the property as being vacant during the delinquency of the Loan. Lender secured insurance can also be placed if a borrower does not provide the lender with his preferred insurance information in a timely manner.

As of the date of this correspondence, there has been no lender placed insurance purchased in connection with the Loan.

The remainder of your requests are overly broad, do not concern the application of payments or the disbursement of funds, and make no allegations whatsoever of any wrongdoing by BAC Home Loans. Accordingly, these requests are declined as they seek documentation that goes beyond that which is available through a "qualified written request" under 12 U.S.C. §2605.

### 11.) Servicing Related Questions

With respect to the Servicing Related Questions section, your requests do not concern the application of payments or the disbursement of funds, and make no allegations whatsoever of any wrongdoing by BAC Home Loans. Accordingly, these requests are declined as they seek documentation that goes beyond that which is available through a "qualified written request" under 12 U.S.C. §2605.

### 12.) Verification of Debt

To the extent the Letter can be construed as a request for verification of the debt, please be advised that the Loan is evidenced by an Adjustable Rate Note dated January 3, 2007, in the principal amount of $303,120.00, executed by the Borrower in favor of Aegis Wholesale Corporation, a copy of which is enclosed. The note is secured by a Deed of Trust dated the same date, a copy of which is also enclosed. Please see paragraph 4 above for information concerning the current owner of the note. Please refer to the enclosed documents for additional information.

Enclosed please find a payoff demand statement, which shows all amounts necessary to pay off the Loan.

In providing the above response, BAC Home Loans is not limiting or waiving any rights or remedies it may now or hereafter have, whether arising under the Loan documents, at law or in equity, all of which rights and remedies are expressly reserved.

I hope that I have addressed your concerns satisfactorily. If you have further questions or concerns regarding the foregoing, please contact BAC Home Loans' FREM Customer Escalation Team at (866) 200-9624. Thank you for this opportunity to be of service.

Very truly yours,

Jonathan K. Moore

Enclosures

$4$